```
1|alphanum"left header}  MB27TRUS
```

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   UNITED STATES OF AMERICA,

 4              v.                        19 Cr. 921 (AKH)

 5   NICHOLAS TRUGLIA,

 6

 7              Plaintiff.

 8                                        Conference
     ------------------------------x
 9
                                          New York, N.Y.
10                                        November 2, 2022
                                          11:00 a.m.
11

12   Before:

13
                    HON. ALVIN K. HELLERSTEIN,
14
                                        District Judge
15
                         APPEARANCES
16
     DAMIAN WILLIAMS
17        United States Attorney for the
          Southern District of New York
18   BY:  TIMOTHY V. CAPOZZI
          Assistant United States Attorney
19
     WALDEN MACHT & HARAN, LLP
20        Attorney for Defendant
     BY:  JEFFREY UDELL
21

22   Also Present:
     Special Agent Elizabeth Pelker, F.B.I.
23

24

25
                   SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300
```

1              (Case called)
2              THE COURT:  Okay.  We have two people on the phone.
3    I'll get to that in a minute.  But for the government, we have
4    Timothy Capozzi?
5              MR. CAPOZZI:  Correct, your Honor.
6              THE COURT:  And?
7              MS. PELKER:  Special Agent Elizabeth Pelker from the
8    FBI.
9              THE COURT:  For the defendant, Jeffrey Udell?
10             MR. UDELL:  Yes.  Good morning, your Honor.  With me
11   is my colleague, Adam Cohen.  And Mr. Truglia is right next to
12   me, your Honor.
13             THE COURT:  Good morning, all.
14             There's one person attending by telephone.  Who is
15   that, sir?
16             THE WITNESS:  Michael Turpin, the victim.
17             THE COURT:  Michael Turpin.  Okay.  So you'll listen.
18   Unless asked to say something, be quiet; all right?
19             MR. TURPIN:  That's correct.  Thank you, your Honor.
20             THE COURT:  Okay.
21             All right.  Mr. Truglia, have you read the Pretrial
22   report?  Take off your mask, please.
23             THE DEFENDANT:  Yes, I read the report, your Honor.
24             THE COURT:  Have you discussed it with your attorneys?
25             THE DEFENDANT:  I have.

1          THE COURT:  Are there any factual errors in the
2  report?
3          MR. UDELL:  Your Honor, we do have some --
4          THE COURT:  Sit down.
5          MR. UDELL:  We do have some --
6          THE COURT:  Take off your mask.
7          MR. UDELL:  Sorry, your Honor.
8          We do have some errors that I'd like to address
9  whenever your Honor would like to hear them.
10          THE COURT:  Now.
11          MR. UDELL:  Okay.
12          So first, your Honor, at paragraph 65 -- and this is
13  all obviously in the final report.  We addressed objections
14  previously, but in paragraph 65, the report says that the
15  officer asked for a letter from a Dr. Edward Maharan outlining
16  Nick's medical history, including his cardiac arrhythmia
17  diagnosis and prescriptions for medication.  In its sentencing
18  submission, the government points out that paragraph and says
19  that Mr. Truglia was not being cooperative by not providing
20  information requested by Probation.  And in that paragraph,
21  you'll see the end of 65, it says that he was directed by the
22  Probation Office to obtain a letter from the doctor outlining
23  his medical history, but he was unable to obtain the letter.
24          So our objections are twofold, your Honor.  First,
25  with respect to what the government says, it doesn't say that

1    he refused to do anything, it said that he was unable to obtain
2    a letter from the doctor.  In fact, what the report does not
3    mention——and we would respectfully request that it be amended
4    to mention this——is that we did submit to Probation
5    corroboration.  That was the point, asking for the letter from
6    the doctor to corroborate his statement that he was treated, as
7    noted in paragraph 65.
8             We submitted three pieces of corroboration for that;
9    one was a photograph of his prescription for the medication
10   listed with Dr. Maharan——that is the prescriber; secondly, a
11   letter from his cardiologist to that doctor, Dr. Maharan, in
12   other words, thanking Dr. Maharan for the referral of
13   Mr. Truglia, thereby showing that Dr. Maharan is treating
14   Mr. Truglia; and thirdly, a letter from another doctor of
15   Mr. Truglia noting that he was evaluating Mr. Truglia for the
16   arrhythmia condition that is described in paragraph 65.
17            So we would respectfully submit that the report,
18   without putting in that we submitted this corroborative
19   evidence, leaves the impression to the government that has
20   argued in its submission——we feel misguidedly——that on that
21   basis, Mr. Truglia was not cooperative with what the Probation
22   Office was requesting of him.  And we respectfully request that
23   an amendment be made clear that he was.
24            THE COURT:  Is it true that Mr. Truglia was asked by
25   the probation officer to obtain a letter from Dr. Maharan?

1          MR. UDELL:  Yes, your Honor.

2          THE COURT:  Is it true is that no letter was

3  forthcoming?

4          MR. UDELL:  That is true, your Honor.

5          THE COURT:  Is it true that it was purposefully not

6  forthcoming?

7          MR. UDELL:  That is not true.  He made efforts to get

8  the letter.

9          Mr. Truglia was incarcerated at the time that that

10 request came in and was unable to get a response from the

11 doctor.  But as I said, we submitted on his behalf, the other

12 corroborating --

13         THE COURT:  I think it should be in compliance with

14 what the probation officer asks.  And Dr. Maharan should be

15 asked again by you and by Mr. Truglia for the letter requested

16 by the probation officer.

17         MR. UDELL:  Yes, your Honor.  We can do that.

18         THE COURT:  Make sure it's done.

19         MR. UDELL:  Absolutely.  Will do, your Honor.

20         I think your Honor's comment right there just sort of

21 foreshadows something that I'm about to say next.

22         THE COURT:  What are you about to say next?

23         MR. UDELL:  I'm about to move on to a couple of other

24 paragraphs, 79 and 80, in the presentence report seized upon by

25 the government.  And, again, I don't fault the government for

1    saying what they did in light of what was in the report, but we

2    believe the report is mistaken when it talks about his

3    cooperation with respect to getting financial information.

4              So turning to paragraph 79, the PSR says that

5    Mr. Truglia did not disclose the name of the bank or financial

6    institution where he maintains a checking account and has not

7    submitted documents for that account.  If you look at the top

8    of paragraph 78 where it lists his assets, you see that

9    checking account is there.  It's the $648.72 asset that we're

10   talking about here now.  The fact is that Mr. Truglia did

11   disclose exactly that, the name of the institution on his

12   financial disclosure form.  We have the form.  It was e-mailed

13   to the Probation Office with the name of the bank.

14             THE COURT:  So you say you have given the name of the

15   bank?

16             MR. UDELL:  Yes, that was given before this.

17             THE COURT:  What is the name of the bank?

18             MR. UDELL:  TD Bank, N.A.

19             THE COURT:  And you submitted documents for this

20   account?

21             MR. UDELL:  To that point, your Honor, respectfully,

22   we do not have any record, to our understanding, of getting a

23   request as follow-up after we disclosed the name for those

24   documents until this PSR comment came out.

25             THE COURT:  When did you see the PSR come out?

1          MR. UDELL:  The PSR came out in June.  But we
2 understood we were going to come into sentencing and we were
3 going to address the comments at sentencing.  In other words --
4          THE COURT:  This is supposed to come to me for the
5 purposes of sentencing.
6          MR. UDELL:  Correct.
7          THE COURT:  So information that is withheld because of
8 imminence of sentencing doesn't help me.
9          MR. UDELL:  Your Honor --
10          THE COURT:  I want the information.
11          MR. UDELL:  And, your Honor --
12          THE COURT:  I want the information; do you understand,
13 Mr. Udell?  I want the information.
14          MR. UDELL:  And I would love to give it to you, and we
15 will, your Honor.
16          Can I say, your Honor --
17          THE COURT:  Why wasn't it provided now?
18          MR. UDELL:  I'll tell you exactly --
19          THE COURT:  Or before now?
20          MR. UDELL:  Because, to my understanding, this was
21 something that was going to come up at sentencing.
22          THE COURT:  That is no excuse, Mr. Udell.  You've been
23 around here a long time.
24          MR. UDELL:  I have, your Honor.  And to that point,
25 I've not had occasion to, after the PSR, to sort of make a sort

1    of surrebuttal kind of commentary on the PSR until the report.

2           Your Honor, your Honor's point is well taken and,
3    respectfully, we would like the opportunity——and I'm going to
4    say again in a minute when we get to these other items——to make
5    a submission on these things that we did not know were
6    outstanding because they weren't asked for.

7           THE COURT:  You knew, Mr. Udell, because the law
8    provides that you get an advance copy of this PSR.  And so you
9    knew from the advanced copy these statements, right?

10          MR. UDELL:  Respectfully, your Honor, I don't believe
11   that in the advanced copy they made the points that you're
12   making, that we're addressing here.  In other words, in the
13   advanced copy, it didn't point these things out.  We believe we
14   gave them everything that was asked for.

15          THE COURT:  When were you asked these questions by the
16   Probation Office?

17          MR. UDELL:  I don't believe we ever were.  That's our
18   point.  In other words, we submitted the bank account
19   information, TD Bank, with his financial disclosure.  And then
20   at no time in our memory -- and, Judge, I'm going to say this
21   on behalf of myself and my firm, if we were asked, it's our
22   oversight, and I am ashamed, and I apologize for that.  But to
23   our knowledge and understanding, there's certainly no reason
24   why we wouldn't have produced that if we were asked.  That's my
25   point, that these things didn't come out or we didn't see them

1  until we saw the final report.  That's the issue, your Honor.
2  And I absolutely request the opportunity to submit it to your
3  Honor.
4              THE COURT:  Does the government have anything to say
5  on this?
6              Sit.  Take your mask off.
7              MR. CAPOZZI:  Sure.
8              Your Honor, we identified these areas in our review of
9  the PSR, which is why we called attention to them in our
10  sentencing submission based on our reading of the final PSR.
11  These materials were not provided, as requested by Probation,
12  by the defense.
13              THE COURT:  When was the defense asked?
14              MR. CAPOZZI:  When, your Honor?
15              THE COURT:  Yes.
16              MR. CAPOZZI:  Your Honor, I do not know.  It's not
17  clear from the face of the report.
18              THE COURT:  Did you see the preliminary version of
19  this report?
20              MR. CAPOZZI:  I did, your Honor.
21              THE COURT:  Do you happen to have it with you?
22              MR. CAPOZZI:  I only have the final report, your
23  Honor, with me.
24              Your Honor, we spoke with defense counsel yesterday
25  when they explained their efforts to collect some of this

1  information.  And of course if your Honor wishes to have this
2  information available to it in order to sentence the defendant
3  appropriately, we wouldn't object to the defense having the
4  opportunity to provide that to you.
5          THE COURT:  I want all these questions answered.
6          MR. UDELL:  Your Honor, we welcome the questions and
7  would be answer to happy to answer them, truly, your Honor.  We
8  did not understand -- and I can tell you as an officer of the
9  court that I didn't understand that there was anything
10 outstanding that was specifically required that we were not
11 getting.
12         It may very well be, your Honor, if we can't get it,
13 we'll say we can't get it.  But with respect to the things I've
14 mentioned so far—and there are one or two others that I will
15 get to if your Honor would like to hear them now—I just don't
16 have a record of us being asked for them expressly.
17         THE COURT:  This final PSR has a date of June 28.
18         MR. UDELL:  Yes, your Honor.
19         THE COURT:  That's three months ago.
20         MR. UDELL:  It is.  Sentencing in this case was
21 supposed to be I believe in July, originally.
22         THE COURT: So you've had all the time since June,
23 assuming you can get it before, which I doubt.  But you had all
24 this time in June to correct this and to get the information.
25         Why didn't you?

1             MR. UDELL:  Your Honor, again, I apologize.  It's, I
2   think, it's one of procedure, meaning I didn't --
3             THE COURT:  That's nonsense, Mr. Udell.
4             MR. UDELL:  Your Honor, I didn't understand that there
5   was a surrebuttal.  We issued our comments to the
6   preliminary --
7             THE COURT:  Mr. Udell, you're a careful lawyer.  You
8   don't allow these things to go unchallenged unless you don't
9   want to give the information, unless you hope that this will
10  slip by the judge.  Get the information on the adjourned date
11  or there will be something to pay for.
12            MR. UDELL:  Will do, your Honor, absolutely.  And I
13  welcome the opportunity.  And I apologize to the Court.
14            THE COURT:  I'm glad you welcome the opportunity.
15            You know, the acceptance of be responsibility must be
16  clear.  Part of the issue of accepting responsibility is to
17  make repayment to the person who was the victim of a theft.
18  And if you can't get the information, the judge can't give a
19  proper response.
20            MR. UDELL:  That's fair, your Honor.
21            THE COURT:  You know that.
22            MR. UDELL:  Understood, your Honor.
23            THE COURT:  I'm looking at page 15, paragraph 71 of
24  the initial PSR, filed December 13, 2021, eleven months ago.
25  ECF 45, paragraph 71 provides:  Additional information is

1  awaiting for two years since his financial statement did not
2  indicate whether he owns any real estate property, or motor
3  vehicles, or provided the detailed account of the jewelry and
4  art owned by the defendant.  Financial statement also did not
5  reflect where Truglia maintains his cryptocurrency.  The
6  defendant did not reflect in his financial statement how he
7  covers his monthly --
8          MR. UDELL:  Your Honor, I believe every single one
9  first of all, none of those things, they don't mention the bank
10 account that I was talking about here.  That's not listed in
11 there.
12         THE COURT:  I've heard enough, Mr. Udell.  I've heard
13 your comments, and I've drawn various conclusions that are
14 pretty evident to me.
15         MR. UDELL:  Well, your Honor, two things.  I do have
16 some other remarks.
17         THE COURT:  I'll hear them.
18         MR. UDELL:  Okay.  So a question whether your Honor
19 would like to hear them now or --
20         THE COURT:  I would like that hear them now, yes.
21         MR. UDELL:  Okay.
22         THE COURT:  The next thing is paragraph 80.
23         MR. UDELL:  I have more on paragraph 79, your Honor.
24 And I will get to 80.  That's the other one.
25         But on 79, first—and this is references something

1    that your Honor just read there——it says that that the

2    defendant maintains his Bitcoin, and they give a wallet name,

3    but they said he has not specified where the wallet is

4    maintained.  And as it turns out, we did tell the Probation

5    Office that the cryptocurrency was stored in online wallets.

6    In other words, he didn't say if it's online or a cell phone or

7    a USB.  And we do have an e-mail where we told the probation

8    officer that it was, in fact, stored online.  There's

9    another --

10             THE COURT:  When what does that mean?  It means you

11   need to give the number so that the account can be accessed.

12   It means that you have to give the substantive information in

13   reliable form to the probation officer.

14             MR. UDELL:  And, again, your Honor, we told him, at

15   his request, that it was online.  So contrary to what this says

16   here, had he said, okay, I need to see a printout or statement

17   from it, we could have undertaken to try to do that.  That was

18   not asked for, your Honor. that's the point.

19             THE COURT:  What is fairly asked and what I now make

20   clear is I want to know what are the assets, where are they

21   located, and how do we get access to them?

22             MR. UDELL:  Understood, your Honor.  And that came in

23   a supplement for the first time.

24             THE COURT:  Because they're going to be enjoined.

25             MR. UDELL:  I'm sorry.

1            THE COURT:  They're going to be enjoined unless
2     there's a compliance with the restitution.
3            MR. UDELL:  Understood, your Honor.
4            I mean, your Honor, can I --
5            THE COURT:  I'm not kidding around with this,
6     Mr. Udell.  You've got a lot at stake here.  You've got a
7     finding whether there's clear acceptance of responsibility.
8     You've got, at hand, a possible variance above the sentencing
9     guidelines within the limits of the statute.  I would not fool
10    around with this.
11           Do you understand me?
12           MR. UDELL:  Understand, your Honor.  Perfectly clear,
13    your Honor.
14           THE COURT:  That goes with jewelry.
15           MR. UDELL:  Actually, before we --
16           THE COURT:  That goes with luxury watches.  It goes
17    with art.  It goes with anything of value.  I'm not going to
18    fence with you on the words of these things.  You now have it
19    clear, anything of value must be fully disclosed, any liens,
20    indemnities on it, anything that the Probation Office needs to
21    know to make a report to me so that I can fully assess
22    Mr. Truglia's ability to make restitution, perhaps immediately.
23           MR. UDELL:  Understood, your Honor.
24           THE COURT:  I also want to find out if there's any
25    relationship between the default judgment suffered by

1  Mr. Truglia by Mr. Turpin in the Los Angeles Superior Court.
2  There's a $75 million default judgment here.
3              MR. UDELL:  I'm sorry, your Honor.  I didn't hear what
4  your Honor said about that.
5              THE COURT:  Is there any relationship between that
6  default judgment of $75 million?
7              MR. UDELL:  And this case?
8              THE COURT:  Yes.
9              MR. UDELL:  Yes.  To my understanding, the default
10 judgment is based -- the 75 million number is, your Honor, a
11 treble damage, a three times multiplier from a civil lawsuit
12 commenced by Mr. Turpin while Mr. Truglia was incarcerated in
13 California.  And so the facts of this case multiplied by three
14 is that civil lawsuit.  And the default which Mr. Turpin
15 achieved was when Mr. Truglia was incarcerated in California
16 and did not have counsel and did not appear in the case.  And
17 he got that default judgment while Mr. Truglia was incarcerated
18 based on these facts.
19             THE COURT:  If he pays up the judgment, will there be
20 any need for restitution in this case?
21             MR. UDELL:  I don't believe so, your Honor.  I mean,
22 if -- oh, I'm sorry.  If he pays the default judgment?
23             THE COURT:  Yes.
24             MR. UDELL:  There certainly would not be.  That would
25 be three times the restitution recovery.  It will be a three

1  times recovery.
2           THE COURT:  And if we eliminate the treble and he pays
3  the default judgment, is there anything left in this case?
4           MR. UDELL:  To my knowledge, your Honor, absolutely
5  not.
6           THE COURT:  Does the government have any insight?
7           MR. CAPOZZI:  Your Honor, if the defendant pays 25
8  million of that 75 million, I do not believe that there would
9  still be any outstanding restitution amount.
10          THE COURT:  All right.  Well, I think you need to get
11 into the superior court and open up that default.  Because as
12 it is, it's going to impact sentencing.
13          How much time do you need to get this information?
14          MR. UDELL:  May I have just one moment, your Honor?
15          (Counsel confer)
16          MR. UDELL:  Your Honor, we'd respectfully request two
17 weeks, just to be conservative in terms of setting a date.  But
18 as soon as the information comes in sooner than that, it will
19 be supplied.
20          THE COURT:  Bridget, can we adjourn this to
21 December 30 at 2:15?
22          MR. CAPOZZI:  Your Honor, I would just respectfully
23 note that I have a planned vacation that week.
24          MR. UDELL:  Actually, me, too, your Honor.
25          THE COURT:  Okay.  The following week.

1           MR. UDELL:  The first week in January, your Honor.
2           THE COURT:  The first week in December.
3           MR. UDELL:  Wait.  Did you say November 30 or
4  December 30?
5           THE COURT:  I don't know what I said, but I meant
6  November 30.
7           Can you make that?
8           MR. CAPOZZI:  That week would be fine, your Honor, the
9  last week in November.
10          THE COURT:  And you can make that, Mr. Udell?
11          MR. UDELL:  Yes.
12          My calendar is freezing up on me.  Is that a Friday,
13  everybody?
14          THE COURT:  No.  It's a Wednesday.
15          MR. UDELL:  Okay.  Hold on one second, your Honor.  I
16  apologize.
17          Yes, I can make that date, your Honor.
18          THE COURT:  Bridget, November 30, 2:15.
19          THE DEPUTY CLERK:  Yes.
20          THE COURT:  Okay.  When will you get the information
21  to the government and to the Court?
22          MR. UDELL:  As soon as we have it, your Honor.
23          THE COURT:  I know.  What date should I give?
24  November 23?
25          MR. UDELL:  Sure, yes, Your Honor.

1          THE COURT:  The day before Thanksgiving.

2          MR. UDELL:  Yep.

3          THE COURT:  Noon.

4          Make sure your client realizes it's a meaningful date,
5  because I'm not going to adjourn it.  If you need more time,
6  I'll give it to you now, but ask your client if everything can
7  be done by November 23.

8          MR. UDELL:  Understood.  Those dates are fine, your
9  Honor.

10          THE COURT:  Okay.  We're adjourned to November 30.

11          MR. CAPOZZI:  Thank you, Judge.

12          MR. UDELL:  Thank you, Judge.

13          THE COURT:  Shall I sign the order of restitution?

14          MR. UDELL:  Your Honor, we'd respectfully request that
15  we wait until the next date.

16          THE COURT:  Okay.

17          MR. UDELL:  Your Honor, if I may, there's one issue
18  with respect to the amount of restitution.

19          THE COURT:  Sit down, everybody.

20          MR. UDELL:  So as your Honor knows, obviously, the
21  amount of restitution that Mr. Truglia will owe is really a
22  function of two separate numbers.  One, what the loss amount
23  was originally discounted by amounts that Mr. Turpin has been
24  repaid already to lower the loss.  And it's with respect to
25  that latter amount—in other words, how much he's

1   received—that there's a question.

2           And we talked about this in our submission, but
3   Mr. Turpin has acknowledged receiving a certain amount of
4   Bitcoin from the leader of this conspiracy, as well as a watch,
5   an expensive watch.  So it's valuing that, those assets.  That
6   is the question.  And by question, I mean, if Mr. Turpin still
7   has that Bitcoin that he's acknowledged was given to him in
8   partial satisfaction of the amounts taken by this conspiracy,
9   depending on whether he sold it -- if he sold it, how much he
10  got for it.  Or if he still has it, there's a great variation
11  and variability in terms of how much he's been recompensed for
12  the crime.

13          THE COURT:  Mr. Turpin, do you have a lawyer?

14          MR. TURPIN:  I believe he should be on the call or
15  there.

16          THE COURT:  Is your lawyer on the call?

17          MR. TURPIN:  Neil or Paul, are you on the call?

18          I thought they would be on the call.  I am
19  represented, yes.

20          THE COURT:  All right.  Your ability to get your money
21  back, Mr. Turpin, requires you to be open with counsel here,
22  both the defense counsel and the government, to make a
23  convincing showing of what you received in relationship to your
24  debt.  You can't be --

25          MR. TURPIN:  Understood.  And that is all in the

1    documents, what was received.  I was going to see who --

2            THE COURT:  Well, Mr. Udell will meet with your

3    lawyers and apprise the government, unless the government wants

4    to be there at the meeting.  And so any controversy should be

5    identified and, if necessary, brought to me.

6            MR. TURPIN:  Thank you.

7            THE COURT:  My intention is to have you paid very soon

8    after the closing of this case, soon after the sentence.  And

9    willingness to pay a just debt is going to be an indication of

10   acceptance of responsibility.

11           MR. TURPIN:  I understand and appreciate that, your

12   Honor.

13           THE COURT:  All right.  Do you want to make things

14   easier also, if you get paid the full amount that you're owed,

15   you might be willing to discharge the default judgment in a

16   much larger sum.

17           MR. TURPIN:  I would be willing to do that, your

18   Honor.

19           THE COURT:  Yes.  You're not going to get restitution

20   for punitive damages.

21           All right.  Folks, thanks very much.  We're recessed

22   until November 30.

23           MR. UDELL:  Thank you, Judge.

24           MR. CAPOZZI:  Thank you, Judge.

25           (Adjourned)