**Federal Defenders**
OF NEW YORK, INC.

Southern District
52 Duane Street-10th Floor, New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

---

Barry D. Leiwant
*Interim Executive Director
and Attorney-in-Chief*

*Southern District of New York*
Jennifer L. Brown
*Attorney-in-Charge*

November 16, 2023

Hon. Alvin K. Hellerstein
United States District Judge
Southern District of New York
United States Courthouse
500 Pearl Street
New York, New York 10007

Re: **United States v. Truglia**
     **19 Cr. 921 (AKH)**

Your Honor:

In general, the law gives the Court discretion to draw an adverse inference against a supervisee based on a failure to testify at his or her revocation hearing. However, given the allegations and the facts adduced at Mr. Truglia's hearing, there is no evidentiary value to be inferred from his silence. Accordingly, the Court should decline to premise its conclusions on an adverse inference from Mr. Truglia's decision not to testify.

**Legal Standard**

A Court may not draw any adverse inference against a defendant based on his refusal to testify at sentencing. *Mitchell v. United States*, 526 U.S. 314, 326-30 (1999). However, a revocation hearing "is not a criminal proceeding" and a probationer is not entitled to the privilege against compelled self-incrimination when his testimony would be used solely to determine the propriety of rescinding his release.. *Minnesota v. Murphy*, 465 U.S. 420, 435 n.7 (1984); *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976)  Cf. *United States v. Hightower*, 312 F.Supp. 3d, 426, 431 n.3  (S.D.N.Y. 2018)("[T]hough technically civil, a [supervised release hearing] bears many of the hallmarks of a criminal trial, including imprisonment....and "as a general matter, the Court

is therefore wary to draw a negative inference in supervised release proceedings.").

An adverse inference from failure to testify is permitted at a revocation hearing when the inference has evidentiary value. The failure of a party to contest an assertion, however, is relevant only if "it would have been natural under the circumstances to object to the assertion in question." *United States v. Hale*, 422 U.S. 171, 176 (1975).

## THE ALLEGATIONS AND FACTS DO NOT SUPPORT AN ADVERSE INFERENCE FROM MR. TRUGLIA'S FAILURE TO TESTIFY

The government's principal assertion is that Mr. Truglia has "failed to make a good faith effort" to pay $20,379, 007 of restitution. The evidence adduced by the government on this score did not "naturally" require Mr. Truglia's testimony in response.

First, the government's evidence shows that Mr. Truglia has consistently acknowledged that he has sufficient means with which to make restitution. After being released from prison, Mr. Truglia informed both his probation officer and counsel for the victim that he was the owner of a Bitcoin account that contained sufficient funds to satisfy his restitution obligation. He provided his probation officer with the public address for his account and the parties have stipulated that the account he identifies contains an amount of Bitcoin that is worth considerably more than the restitution amount.

Second, the government's witnesses related Mr. Truglia's repeated efforts to access his Bitcoin account so that he could pay his restitution. Mr. Truglia's probation officer and counsel for the victim both acknowledged that Mr. Truglia had identified various means by which he could gain access to his account. They also testified about Mr. Truglia's efforts in this regard, including searching a storage locker and subsequently traveling to New York to meet the victim's counsel and to retrieve portions of an access code from two friends.. Bennett Genovesi, a third friend, testified about Mr. Truglia's extremely aggressive attempts to get Genovesi to return a memory device that would have allowed Mr. Truglia to access his account

In short, the prosecution's case does not invite a response from Mr. Truglia. The Court, of course, is not required to accept all of the testimony, but there is nothing about the evidence elicited that would have made it "natural" for Mr. Truglia to testify.[1]

---

[1] Mr. Truglia's father testified that he was told that the bags sent to him by Bennett Genovesi should contain "a very expensive watch, other jewelry and a memory stick" T. 200. The government suggests that Mr. Truglia could have testified as to what the memory stick contained. The marginal value from such projected testimony is hardly sufficient to support an adverse inference from Mr. Truglia's decision not to take the stand.

## THE GOVERNMENT IS PRECLUDED FROM SEEKING A RESENTENCING BECAUSE IT EXPLICITLY AGREED THAT IT WOULD CHOOSE BETWEEN A SUPERVISED RELEASE HEARING AND AN APPLICATION FOR A RESENTENCING

At the conclusion of the hearing, the government acknowledged that the hearing was "technically" a proceeding on whether Mr. Truglia had violated the terms of his supervised release. The government also suggested however that "your Honor could also make findings on whether on not there's a basis for resentencing based on the record before the Court." T.201-202.

As detailed below, the government abandoned any application for resentencing by electing to proceed with the VOSR hearing. It would be a gross violation of due process to allow the government to renege on its choice and retroactively convert the VOSR hearing into the prelude to a resentencing.

Prior to the August 2,, 2023 conference the parties spoke and agreed that the government would have until September 8, 2023 to elect between making an application for a resentencing or going forward with a supervised release violation hearing. At the conference, the proposed agreement was placed on the record.

> MR. GOMBINER: Well, we haven't completely reached a resolution in this matter, but what the parties would propose is *that the government have until September 8 to determine whether or not they wanted to seek a resentencing*, at which to obtain that, they would have to establish that Mr. Truglia has already fully failed to pay restitution. That's under Title 18, United States Code, section 3614(b). *Or, whether they would just want to proceed with the violation of supervised release.*

Transcript of August 2, 2023 conference, page 2.

The government did not dispute this agreement and the Court noted that "I think Mr. Gombiner logically is correct" [that there could not be both a VOSR hearing and a resentencing} T.3

Following the August 2, 2023 conference, the government did no file a motion for a resentencing and/or request that the Court hold a hearing on such an application. Rather, on September 18th, without any further discussion, the VOSR hearing commenced with the testimony of Mr. Truglia's probation officer, Christopher Davis. The government did not say anything to indicate that it viewed the proceeding as anything other than a VOSR hearing and Mr. Truglia unequivocally understood that the government had made its choice.

Mr. Truglia obviously would have conducted the hearing differently if he had known that the government was not intending to honor the agreement stated in open court on August 2,

3

2023. The Court should not countenance any belated application for a resentencing simply because the government is unhappy with the choice it made.

Respectfully submitted,

Mark B. Gombiner
Christopher Flood

Attorneys for Nicholas Truglia

cc AUSA Timothy Capozzi