**Federal Defenders**
OF NEW YORK, INC.

Southern District
52 Duane Street-10th Floor, New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

Barry D. Leiwant
*Interim Executive Director
and Attorney-in-Chief*

Southern District of New York
Jennifer L. Brown
*Attorney-in-Charge*

December 23, 2023

Hon. Alvin K. Hellerstein
United States District Court
Southern District of New York
United States Courthouse
500 Pearl Street
New York, New York 10007

Re: **United States v. Nicholas Truglia**
    **19 Cr. 921 (AKH)**

Your Honor:

This letter responds to the Government's suggestion that the Court is "entitled to exercise its independent authority under Title 18, U.S.C. § 3614 to order a resentencing of the defendant for his continued willful failure to pay his restitution obligation." *Gov't Letter of November 17, 2023*. Neither the facts nor the law supports this novel proposal.

1, The Court may not resentence Mr. Truglia for his alleged failure to pay restitution because the government has not moved for a resentencing. There is no authority for the proposition that a Court may initiate a resentencing for an alleged failure to pay restitution absent a motion or charging document and without an evidentiary hearing pursuant to such a motion.

2. Even if the Court could, *sua sponte*, order a resentencing, it could not impose any additional term of imprisonment. Section 3614 allows a Court to resentence a defendant to a term of imprisonment only where a defendant "willfully refused to pay the delinquent fine." The judgment against Mr. Truglia does not contain any fine and the plain terms of the statute do not allow for an additional term of imprisonment for a failure to pay restitution.

3. A resentencing to additional imprisonment, pursuant to Section 3614, is not permissible because the evidence establishes that Mr. Truglia does not have the present financial ability to comply with the restitution order. A defendant may not be resentenced to prison for failure to pay restitution when he doesn't have the financial resources to do so. 18 U.S.C. § 3614(c ); *Bearden v. Georgia*, 461 U.S. 660 (1983).

**MR. TRUGLIA MAY NOT BE RESENTENCED UNDER SECTION 3614 FOR FAILURE TO PAY RESTITUTION BECAUSE THE GOVERNMENT HAS NOT MOVED FOR A RESENTENCING.**

Mr. Truglia may not be resentenced under Section 3614 for his alleged failure to pay restitution because the government has not moved for such a remedy. Due process and case law require that any potential resentencing for an alleged failure requires notice and a hearing.

On December 1, 2023, the Court endorsed a Consent Order of Restitution which required Mr. Truglia to wire the victim $12,100,000 by December 31, 2023 and an additional $8, 279,007 by January 30, 2023.

Mr. Truglia was released from prison on January 6, 2023.  He was arrested in Florida on May 11, 2023 and detained on charges that he violated various conditions of his supervised release.

On July 10, 2023, Mr. Truglia appeared before the Court and was arraigned on a Violation of Supervised Release Petition that contained seven specifications.  Specification 5 charges that "On or before February 6, 2023, the Supervisee failed to make a good faith effort to pay the Court-ordered restitution in that Truglia failed to make a payment in the amount $12,100,000 within thirty days (30) of the filing of judgment and $8,279,007 in the following thirty (30) days for a total of $20, 379,007 as ordered by the Court."  Mr. Truglia entered a not guilty plea to this specification and all of the others, except for Specification 4 (traveling out of district without permission).   The government advised the Court that "we're not seeking re-sentencing today." *7/10/23 Conference, page 10.*

 On August 2, 2023, the Court scheduled a Violation of Supervised Hearing on the specifications for September 18, 2023.  Counsel for Mr. Truglia placed on the record that the parties had agreed that the government would have until September 8, 2023 "to determine whether they wanted to seek a resentencing....or whether they just want to proceed with the violation of a supervised release hearing."  *8/2/2023 Conference, page 1*.

On September 18, 2023 and following dates, the Court held a Violation of Supervised Release Hearing.  The government's first witness was Probation Officer Walter Davis. Officer Davis testified about a number of the specifications, including the allegations that Mr. Truglia had not made a good faith effort to pay restitution, had failed to truthfully answer a question as to when he began looking for employment and failed to keep weekly logs of his job search as directed by his probation officer.

The Violation of Supervised Release Hearing concluded on November 7, 2023.  At the conclusion of the hearing, the government acknowledged that the hearing was "technically" a proceeding on whether Mr. Truglia had violated the terms of his supervised release. The government also suggested however that "your Honor could also make findings on whether or not there's a basis for resentencing based on the record before the Court." T.201-202

2

By letter of November 16, 2023, the government argued that the Court did not have to decide whether the "no adverse inference" rule that applies to criminal proceedings is also applicable to revocation proceedings. Instead, the government declared that the evidence presented during the hearing "amply establishes" that Mr. Truglia "knowingly and willfully" pursuant to Title 18, U.S.C. §§ 3613(A) and 3614.

When a defendant is alleged to be in default on a payment of restitution, Title 18 U.S.C. § 3613A provides for a number of potential sanctions, including revoking a term of supervised release, modifying the term of supervised release, resentencing a defendant pursuant to Section 3614, holding the defendant in contempt of court, "or take any other action necessary to obtain compliance with the order of....restitution."

The potential sanctions for failure to pay restitution are not self-executing. Before the Court can take any action on an alleged failure to pay restitution, it must first hold a hearing with respect to the contemplated sanction. For example, 18 U.S.C. §3613A lists revocation of supervised release as one possible penalty for failure to pay restitution.. However, before a Court could impose such a sanction, a defendant would have to receive (1) written notice of the alleged violation, (2) disclosure of the evidence against him, and an opportunity to present evidence and question adverse witnesses.. *Rule 32.1 (b)(2) of Federal Rules of Criminal Procedure*.

The same due process requirements of notice and a fair hearing embodied by Rule 32.1(b) apply with equal, if not greater force, [1] to a hearing on a potential possible re-sentencing under Section 3614. There is zero authority for the notion that a Court can, on its own initiative, retroactively convert a V.O.S.R. proceeding on a failure to pay restitution into a resentencing proceeding.

For this reason, courts have uniformly assumed that a government motion is a necessary predicate to a hearing on whether resentencing is authorized. See *United States v. Timility,* 148 F.3d 1, 5 (1ST Cir. 1998)(if defendant failed to pay restitution, his supervised release could be revoked or "alternatively, *the government could seek* to have a defendant resentenced…."); *United States v. Brantley*, 2018 WL 10455162 N.D. Texas 2018)(where there was a question as to whether defendant had paid a fine, government would have to seek a finding from Court that defendant was in default. "Upon such a finding, *the government could request* the Court impose one of several options, including resentencing under 18 U.S.C. § 3614….).

In line with the above principles, every reported case of a resentencing under Section 3614 appears to have been triggered by a government motion. See e.g., *United States v. Chusid*, 372 F.3d 113, 115 (2d Cir. 2004) (government requested that defendant be resentenced, pursuant to 18 U.S.C. § 3614); *United States v. Johnston*, 595 F.3d 292, 293 (6th Cir. 2010)( government filed motion to resentence defendant for willful failure to pay restitution); *United States v. Lippit*, 180 F.3d 873, 875 (7th Cir. 1999)(government moved to resentence defendant pursuant to 18 U.S.C. § 3614); *United States v. Dalmey*, 2018 WL 5817158 (D.Ct. 2018)(government moved

---

[1] A violation of supervised release hearing is not a criminal proceeding, while a re-sentencing surely is.

for resentencing under 18 U.S.C. § 3614); *United States v. Henricks*, 2015 WL 106160 (W.D. Wisc. 2015)(government moved the court to resentence defendant under18 U.S.C. § 3614).[1]

    Finally, the absence of a government motion for a potential resentencing is not cured by the notice in the V.O.S.R. petition.  The government incorrectly claims that there is no notice issue because "the primary specification at issue during the [V.O.S.R.} hearing presents the same question relevant to resentencing--whether the defendant has failed to make a good faith effort to pay restitution." 11.17/23 GL at 2.   This is not true.  Section 3614 (a) is triggered by a "knowing" failure to pay restitution.  The government acknowledges that "knowing" requires proof of Mr. Truglia's "continued willful failure to pay his restitution" *11/17/23 Gl at 1*   The V.O.S.R. specification that was the subject of the hearing, accuses Mr. Truglia of a "failure to make a good faith effort."  Willfulness is a far more demanding standard than "failure to make a good faith effort, which could be established by evidence of mere negligence or indifference.

**THE COURT MAY NOT RESENTENCE MR. TRUGLIA TO A NEW TERM OF IMPRISONMENT BECAUSE SECTION 3614(B) LIMITS A NEW TERM OF IMPRISONMENT TO FAILURE TO PAY A FINE**

    The Court does not have the power to sentence Mr. Truglia to any additional time in custody even if it were to decide to conduct a resentencing.   Title 18, U.S.C. § 3614 (a) permits a Court to order a resentencing "if a defendant knowingly fails to pay a delinquent fine or restitution."  However, a defendant may be sentenced to imprisonment only where "the defendant willfully refused to pay the delinquent fine...."  Mr. Truglia did not receive any fine.  Accordingly, he cannot be sentenced to any additional imprisonment as part of a new sentence.

    This is not a close question.  The terms of the statute explicitly limit a new term of imprisonment to a defendant who is delinquent in paying a fine.  Congress did not intend for "fine" and "restitution" to mean the same thing.  Indeed, § 3614(a) specifically distinguishes between fines and restitution. <u>Cf</u>. *United States v. Major*, 61 Fed. Appx. 752, 754 (2d Cir. 2003) (discussing difference between fine and restitution). Subsection  (b) is equally clear that imprisonment may be imposed only on defendants who are delinquent in paying a fine.   "Where the language of a statute is clear and unambiguous, courts must give effect to its plain meaning." *Winans v. Starbuck Corporation*, 796 F. Supp.2d 515, 518  (S.D.N.Y. 2011).
.
    Moreover, there is a good reason why Congress has authorized a new term of imprisonment only for failure to pay a fine.  A fine is a punitive sanction.  Restitution, however, although stemming from a criminal conviction is not a punishment.  *United States v. Brooks*, 878 F.3d 78, 91 (2d Cir. 2017); *United States v. Newman*, 144 F.3d 531, 541 (7th Cir 1998) (restitution is not a punitive sanction).  Accordingly, Congress decided that any resentencing for willful failure to pay restitution, as opposed to a fine, could only involve non-jail sanctions.[2]

---

[1]  Indeed, in this very case, the government has acknowledged that it bears the responsibility for seeking a resentence.  "We are not seeking resentencing today."

[2] <u>See also</u> Title 18, U.S.C. § 3615 which makes willful failure to pay a fine a separate criminal offense.  There is no corresponding criminal statute for willful failure to pay restitution.

**MR. TRUGLIA CANNOT BE RESENTENCED TO A NEW TERM OF IMPRISONMENT BECAUSE HE DOES NOT HAVE THE CURRENT FINANCIAL CAPACITY TO PAY THE RESTITUTION ORDER**

The evidence from the V.O.S.R. hearing establishes that Mr. Truglia does not have the present capacity to pay his restitution because he cannot gain access to the Bitcoin wallet that contains the necessary funds. Accordingly, he has neither willfully failed to pay restitution nor failed to make a good faith effort to pay restitution and he cannot be further imprisoned for his current indigency.

**Mr. Truglia's Good Faith Efforts to Pay Restitution**

From the time of sentencing to now, Mr. Truglia has maintained that he owns a Bitcoin cyber wallet that contains about 3,196 Bitcoins. 11/28/2022, PSR, par.78. At the time of sentencing, these Bitcoins were worth about 52 million dollars. On today's market, the Bitcoins are worth more than 130 million dollars. This Bitcoin wallet contains the bulk of Mr. Truglia's assets and is the only source that would allow him to satisfy the 20 million dollar restitution order.

Mr. Truglia was released from prison on January 6, 2023. Since that time, he has been unable to find the key that would allow him to gain access to the wallet with the Bitcoins. The record shows that he has made strenuous efforts to locate the key, but has not yet succeeded in recovering the password.

On January 18, 2023, Mr. Truglia told his probation officer, Walter Davis, that he "cannot find the UB key needed to conduct the two-factor authentication." He further advised Mr. Davis that he had searched a storage facility for three hours on January 13, 2023, but could not locate the "small device." HT 22. Mr. Truglia also told Officer Davis that the UB key would allow him to gain access to a Proton email account that had the private password to the Bitcoin wallet. Id.

In March of 2023, Officer Davis directed Mr. Truglia to complete a financial disclosure form. On the form, Mr. Truglia listed the Bitcoin wallet as containing 3190 Bitcoins, valued at 88 million dollars. HT 12. Mr. Truglia also provided the public address for the account. The parties have stipulated that the public address provided by Mr. Truglia corresponds with a Bitcoin account that contains the same number of Bitcoins as listed on the financial disclosure form. The public address does not say who controls the account.

The only other substantial assets listed on the form were jewelry worth about 1 million, four hundred and fifty thousand dollars and Zcash worth 382 thousand dollars. Mr. Truglia provided the public key number for the Bitcoin account.

In April of 2023, Mr. Truglia told Officer Davis that he needed to travel to New York so that he could gain access to his Bitcoin account. He needed to go to New York so that he could obtain keys that he had given to three friends. HT 18. Officer Davis granted permission for this trip.

When he arrived in New York, Mr. Truglia met with Neil McCarthy, one of the lawyers for Michael Terpin, the victim of the offense and the man whom Mr. Truglia owed 22 million dollars in restitution. Mr. Truglia told Mr. Mr. McCarthy that he was going to be able to pay Mr. Terpin "after he obtained the two sets of seed words [from two different people] as well as a third set of seed words from a third party named Bennet Genovese." HT 64.

Mr. McCarthy and Mr. Truglia went to two locations where Mr. Truglia indicated he was going to meet the people who had the seed words. On each occasion, Mr. Truglia briefly left Mr. McCarthy and returned with a list of eight words. Mr. Truglia did not provide Mr. McCarthy with the names of the people who had given him the lists, explaining that hey did not want to be known. HT 70, 74.

Mr. Truglia also informed Mr. McCarthy that a third person, Bennet Genovesi, possessed the remaining portion of the seed words "on a hard drive that he had transferred to Mr. Genovesi….in December of 2021, outside, he said, the Dominic Hotel, again, in Manhattan." HT 67.

Bennet Genovesi admitted that he had received two bags from Mr. Truglia in December of 2021 outside the Dominic Hotel and that Mr. Truglia had asked him to send the bags to his father if he was sent to jail (as he was). Mr. Genovesi further confessed that the bags contained very expensive jewelry. He sent the bags to Mr. Truglia's father but kept the jewelry. HT 112. Mr. Genovesi denied that the bags contained a hard drive or other memory device. HT 111.

In April of 2023, Mr. Truglia and a friend, Elvis, went to the bar where Mr. Genovesi worked. HT 128. When Mr. Genovesi, left the bar, Elvis "ushered me to his car." Mr. Truglia and a woman were already in the car. After driving a few blocks, the woman got out of the car. Elvis, according to Mr. Genovesi, "then drew a knife on me," while driving the car with his left hand. HT. 129. Elvis threatened Mr. Genovesi—"he told me I'm pretty and that can change very quickly." HT 130.I

Elvis, Mr. Truglia, and Mr. Genovesi proceeded to Mr. Genovesi's apartment. Once inside the apartment, Elvis and Mr. Truglia searched his belongings, "looking for a hard drive." Elvis told Mr. Genovesi that if he found the hard drive "he could make a lot of money."

On April 8, 2023. Mr. Truglia sent a text message to Mr. Genovesi, stating "You need to give me the hard drive. This gets bad quickly. I don't want to ruin your life. But these lawyers are involved now. Do the right thing." HT 137.

Finally, Mr. Truglia's father, Vincent Truglia, testified that he received two bags from Mr. Genovesi in December of 2021. Shortly after receiving the bags, he received a call from Mr. Truglia (who was still in jail) asking him to look through the bags for a memory device.

6

**Mr. Truglia Does Not Have Any Other Assets other than the Bitcoin Account that Would Allow Him to Pay Restitution**

The Government maintains that "the weight of the evidence suggests that he doesn't own that [the Bitcoin] wallet." Indeed, according to the government, Mr. Truglia has "fabricated this whole story to run the victim and the victim's counsel on a wild-goose chase about this particular wallet." HT 204, 205.

The government, however, has not produced any evidence that Mr. Truglia has any other assets that would permit him to pay anything even close to the $20 million dollar restitution order. Matthew Suhocki, a senior financial investigator for the United States Attorney's Office of the Southern District of New York, testified that he has been working to identify financial assets of Mr. Truglia that could be used to repay the victim. HT 31. He began his investigation in December of 2022. HT 51.

The gist of Mr. Suhocki's testimony is that he located a couple of hundred thousand dollars in a Wells Fargo account of Mr. Truglia's. He has also found that Mr. Truglia used some of his money in 2023 to purchase a few luxury items that amounted to less than 10,000 dollars. Mr. Suhocki agreed that the assets he has identified are "a very small fraction" of the restitution amount and would not be enough to pay the restitution. HT 52.

**The Court Cannot Resentence Mr. Truglia to a new Term of Imprisonment Because He is Not Financially Capable of Paying the Restitution Order**

Mr. Truglia's position is that he is the owner of a Bitcoin wallet that contains (at today's price) over 130 million dollars of Bitcoins, a sum more than sufficient to pay the restitution order. Mr. Truglia, however, is unable to access the wallet at this time because he cannot find the private key to the wallet.

The government argues that Mr. Truglia's claim to own the Bitcoin wallet is an "elaborate and fraudulent scheme." The government, however, has offered no evidence that Mr. Truglia has any other money with which to pay the 20 million dollar restitution.

Regardless of whom the Court credits, Mr. Truglia cannot be resentenced to a new term of imprisonment. If Mr. Truglia is telling the truth about the Bitcoin account[3], he has the money but can't get it. If the government is right, Mr. Truglia is a liar, but he doesn't have any money. In either event, Section 3614( c ) precludes the Court from imposing a new term of imprisonment because they establish an "inability to pay.

---

[3] There is strong reason to believe that he is. The Bitcoin account for which he has provided a public address has not shown any activity since he first started looking for the key after getting out of jail. If the account was owned by someone else, it seems unlikely that there would have been no additions or withdrawals. Moreover, the account he claims to own is the same one that he identified when he was sentenced. At that time, both the government, the Probation Office, and Mr. Truglia's counsel, Jeffrey Udell, were all confident that the account was real. The extraordinary efforts Mr. Truglia has made to find the key, as set forth in the hearing testimony, also indicate that he is not making up a story.

**CONCLUSION**

  For the foregoing reasons, the Court may not resentence Mr. Truglia under Title 18, U.S.C. Section 3614. If the Court determines that a resentencing is warranted, Mr. Truglia requests that the Court reopen the hearing so that he may offer additional proof on his lack of ability to pay the restitution order.

           Respectfully submitted,

           Mark B. Gombiner
           Christopher A. Flood
           Attorneys for Nicholas Truglia

Cc: AUSA Timothy Capozzi