P4T1TRUS

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

            v.                        19 Cr. 921 (AKH)

NICHOLAS TRUGLIA,

            Defendant.               Resentencing
------------------------------x

                                     New York, N.Y.
                                     April 29, 2025
                                     11:40 a.m.


Before:

                HON. ALVIN K. HELLERSTEIN,

                                     District Judge


                        APPEARANCES

JAY CLAYTON
     United States Attorney for the
     Southern District of New York
BY:  TIMOTHY A. CAPOZZI, ESQ.
     Assistant United States Attorney

FEDERAL DEFENDERS OF NEW YORK INC.
     Attorneys for Defendant
BY:  MARK B. GOMBINER, ESQ.
     CHRISTOPHER A. FLOOD, ESQ.
     ALLEGRA GLASHAUSSER, ESQ.
```

P4T1TRUS

1          (Case called)

2          THE DEPUTY CLERK:  Counsel, please state your

3     appearances for the record.

4          MR. CAPOZZI:  Good morning, your Honor.  Timothy

5     Capozzi for the United States.

6          MR. GOMBINER:  And Mark Gombiner, along with Allegra

7     Glashausser and Christopher Flood, Federal Defenders, for

8     Mr. Truglia.  Good morning, Judge.

9          THE COURT:  Good morning, Mr. Gombiner.  Good morning,

10     Mr. Truglia.

11          This is a resentencing procedure because of

12     Mr. Truglia's willful failure to pay restitution, and because

13     of his having lied to me as a way of inducing me to give him a

14     lower sentence at the time that I sentenced him originally.

15          Mr. Truglia, have you read the amended——

16          MR. GOMBINER:  Your Honor, before we go any further,

17     we are strenuously objecting to this resentencing proceeding.

18     It's in violation of Mr. Truglia's Fifth and Sixth Amendment

19     rights, and Ms. Glashausser, who is with the appeals section of

20     our office, is prepared to address those points, but I think

21     it's very important that we first determine whether——

22          THE COURT:  I agree, Mr. Gombiner.

23          MR. GOMBINER:  Thank you, Judge.

24          THE COURT:  Are you prepared today, Mr. Capozzi, to

25     respond?

P4T1TRUS

1            MR. CAPOZZI:  Yes, your Honor, and our papers

2    responded.

3            THE COURT:  Okay.  Take the podium, please.

4            And tell me your name again.

5            MS. GLASHAUSSER:  Allegra Glashausser, your Honor.

6            THE COURT:  First name?

7            MS. GLASHAUSSER:  Allegra, A-L-L-E-G-R-A.

8            THE COURT:  Yes, I have it.  And Glashausser is

9    spelled?

10            MS. GLASHAUSSER:  G-L-A-S-H-A-U-S-S-E-R.

11            THE COURT:  Okay, Ms. Glashausser.

12            MS. GLASHAUSSER:  Thank you, your Honor.

13            Your Honor, Mr. Truglia has already been punished for

14    wire fraud.  He has finished his term of imprisonment.  His

15    sentence is final.  So resentencing him now would violate his

16    double jeopardy rights.  We are aware of no cases that have

17    gone forward in this posture.  The government hasn't cited any;

18    we haven't found any.  Mr. Truglia is not on probation, as is

19    the case with many of the cases that raise this statute, and

20    he's not still serving his sentence, which was another category

21    of two cases the government cited.  No case have we found where

22    somebody has finished their term of imprisonment and is now

23    facing a new term of imprisonment for the same offense, and the

24    government is asking for something that's double what he had

25    already served.

P4T1TRUS

1          THE COURT:  Is he technically on supervised release?

2          MS. GLASHAUSSER:  He is on supervised release, your

3     Honor, yes, and we would not object at all to your Honor making

4     a finding on a violation of supervised release and sentencing

5     him that way.  That's the ordinary course.  That is what we are

6     requesting.  This is different.

7          THE COURT:  What about Section 3614?

8          MS. GLASHAUSSER:  Section 3614 would be

9     unconstitutional applied to Mr. Truglia here.  What the

10    government is proposing is that he be sentenced again on the

11    original case or, in the alternative—it's a little unclear—in

12    the alternative, they're saying, he should be sentenced for

13    willfully failing to pay his restitution.

14         THE COURT:  That's the ground under 3614 for a

15    resentencing.  That is a resentencing of the original sentence.

16         MS. GLASHAUSSER:  Right, your Honor.  That's what the

17    statute says.

18         THE COURT:  You're not saying it's unconstitutional on

19    its face; you're saying it's unconstitutional as applied.

20         MS. GLASHAUSSER:  Well, your Honor, it would not be

21    unconstitutional for a probationer, for somebody on probation,

22    because there is a whole body of law, statute, that applies to

23    probation.  That is somebody who has avoided imprisonment and

24    understands that a violation of probation can result in a

25    resentence.  That's far from the case of Mr. Truglia.

1          THE COURT:  You distinguish between a probationer and

2     a supervised releasee?

3          MS. GLASHAUSSER:  Yes, your Honor, and that's because

4     somebody who is on supervised release, who has already finished

5     their term of imprisonment, has a final sentence, and what the

6     double jeopardy clause prohibits is getting a second punishment

7     for the same offense after you have finished your original

8     case.

9          THE COURT:  Is there any statutory or regulatory

10    citation that you can put to me distinguishing between a

11    probationer and a person on supervised release?

12         MS. GLASHAUSSER:  Well, probation has statutes that

13    govern how——

14         THE COURT:  I know, but is there something in the

15    sentencing guidelines upon which you might rest, that make a

16    distinction between the two?

17         MS. GLASHAUSSER:  The sentencing guidelines, your

18    Honor, I must admit——they must, in that there's a whole

19    separate category in the guidelines, Chapter 7, that relates to

20    violations of supervised release.  It's a separate category.

21    It is not about probation.  It's about supervised release.  We

22    have separate statutes governing the type of hearing you get on

23    supervised release and the sort of sentences that are

24    available.  Supervised release violations are also something

25    addressed at the original guilty plea that people are on notice

P4T1TRUS

of.  There is case law about supervised release violations.
None of that applies to our circumstance here, what the
government is proposing we do here.

THE COURT:  Chapter 7 is entitled Violations of
Probation and Supervised Release.

MS. GLASHAUSSER:  I don't have the title in front of
me, your Honor, but what I——the guidelines themselves are
different for violations of supervised release.  So for a
violation of supervised release, Mr. Truglia faces completely
different guidelines than what he faced on his original wire
fraud conviction.  We have no objection to Mr. Truglia——with
your Honor going forward with a violation of supervised release
determination and a future resentencing for Mr. Truglia.
That's not what the government is proposing here.

THE COURT:  And that's not what I proposed either.
Chapter 7 is entitled Violations of Probation and Supervised
Release.  On background, it discusses probation and discusses
supervised release, describing it as a new form of
post-imprisonment supervision, and distinguishing it from
parole.  And it says the conditions of supervised release,
authorized by statute, are the same as those for a sentence of
probation.

MS. GLASHAUSSER:  But, your Honor, the sentencing
guidelines portion——I apologize; I'm not sure where it is in
Chapter 7 where it outlines of range of sentences available for

P4T1TRUS

supervised release——is not the same as for probation.

Supervised release is a different——it's part of what the Second

Circuit says the matrix of punishment from the original offense

is something that is described to defendants at their guilty

plea, and there is a different guideline that applies when

somebody violates their supervised release.

THE COURT:  Section 7B1.3 provides for revocation of

probation or supervised release.

MS. GLASHAUSSER:  Right, your Honor, but the guideline

itself and the maximum possible penalties are completely

different for a violation of supervised release than a

violation of probation.

THE COURT:  I don't think your letter went into that.

MS. GLASHAUSSER:  That's true, your Honor.  I'm just

trying to answer your Honor's question.

THE COURT:  Well, I think you may have been in error

on that, but I'll be glad to read a supplementary submission

discussing the sentencing guidelines.

What 3614 says is as follows:

Paragraph (a).  "Subject to the provisions of

subsection (b), if a defendant knowingly fails to pay a

delinquent fine or restitution the court may resentence the

defendant to any sentence which might originally have been

imposed."

Paragraph (b).  "The defendant may be sentenced to a

P4T1TRUS

```
1    term of imprisonment under subsection (a) only if the court

2    determines that—"

3         "(1) the defendant willfully refused to pay the

4    delinquent fine, or had failed to make sufficient bona fide

5    efforts to pay the fine; or

6         "(2) in light of the nature of the offense and the

7    characteristics of the person, alternatives to imprisonment are

8    not adequate to serve the purpose of punishment and

9    deterrence."

10        And then subparagraph (c) deals with indigency, which

11   is not involved here.

12        So I made those findings.

13        MS. GLASHAUSSER:  Your Honor, our argument is this

14   statute is unconstitutional either because it violates—

15        THE COURT:  As applied.  So what is the application?

16   The application is Mr. Truglia's willful failure to pay

17   restitution.

18        MS. GLASHAUSSER:  No, your Honor.  The problem is that

19   your Honor is proposing to resentence Mr. Truglia for the same

20   crime that he was originally convicted of—wire fraud.

21        THE COURT:  That's what a resentencing is.

22        MS. GLASHAUSSER:  Right.  But his sentence is final.

23   So to give him additional punishment on that sentence—

24        THE COURT:  So how do you explain 3614?

25        MS. GLASHAUSSER:  It's unconstitutional, your Honor.
```

P4T1TRUS

1          THE COURT:  On its face now; you're arguing on its

2     face it's unconstitutional.  Because if it's unconstitutional

3     as applied, you have to think of circumstances where it might

4     be constitutional or it might be unconstitutional, but if it's

5     unconstitutional on its face, it means it can never be enacted,

6     there can never be a resentence after the first sentence, no

7     matter what the fraud, no matter what the failure.

8          MS. GLASHAUSSER:  I believe probationers could, your

9     Honor.  I'm trying not to take on a greater burden than I need

10    to.  If your Honor believes it's totally unconstitutional, I'm

11    okay with that.

12         THE COURT:  I'm not saying that at all.

13         MS. GLASHAUSSER:  I understand that, your Honor.

14         THE COURT:  I'm applying it because there's a willful

15    failure to pay restitution.  Restitution is part of the

16    original sentence.  This is a mandate.  It's a mandated part of

17    the original sentence, to pay restitution.  And if a person

18    says "I'm going to pay restitution" and doesn't pay

19    restitution, and it's willful, I have the authority under 3614

20    to resentence——

21         MS. GLASHAUSSER:  But you don't, your Honor.

22         THE COURT:  ——which means I go back to the original

23    sentence and I say, new conditions, I want to take those into

24    consideration.

25         MS. GLASHAUSSER:  That would violate double jeopardy,

P4T1TRUS

```
 1    and if it doesn't, then this is a new criminal penalty and
 2    Mr. Truglia has the right to all of his criminal rights——the
 3    right to indictment, the right to a jury trial——because it's
 4    either punishing the——
 5              THE COURT:  How do you explain United States v.
 6    Colasuonno, 697 F.3d 164?  It's an affirmance of a case of
 7    mine, where the defendant had willfully failed to pay
 8    restitution and I sentenced him to a term of incarceration and
 9    supervised release on the underlying substantive crime.
10              MS. GLASHAUSSER:  That was Colasuonno, your Honor?
11              THE COURT:  Colasuonno, C-O-L-A-S-U-O-N-N-O.  He was
12    an accountant in Westchester that was involved in frauds.
13              MS. GLASHAUSSER:  Yes, your Honor.  He was on
14    probation.  So he violated his probation, and your Honor did
15    resentence him.  We would not be making this argument——
16              THE COURT:  I sentenced him to home confinement.
17              MS. GLASHAUSSER:  Excuse me, your Honor?
18              THE COURT:  I sentenced him to home confinement——
19              MS. GLASHAUSSER:  Okay.
20              THE COURT:  ——not probation.
21              MS. GLASHAUSSER:  In the Second Circuit's decision, it
22    notes that it was a sentence for probation.  That's what I am
23    relying on.
24              THE COURT:  Well, there's no difference between
25    supervised release——I hold there's no difference in this
```

P4T1TRUS

1   respect.

2          All right.  I heard your arguments.  I decline to rule

3   as you say.  I believe that 18 U.S.C. Section 3614 is

4   constitutional, and basic to sentencing.

5          MS. GLASHAUSSER:  Your Honor, I just want to make

6   sure, because I focused on double jeopardy.  The second

7   constitutional argument is that Mr. Truglia needs to have his

8   full due process rights.  Right now he has had none.  He had a

9   violation of supervised release hearing.  He's had no hearing

10  related to 3614.  What he is entitled to, if he is being

11  sentenced for willfully failing to pay restitution, is a jury

12  trial, the full panoply of constitutional rights, or at least

13  some due process rights.  Right now he has not had any, as

14  there is no—

15         THE COURT:  There's no jury trial for resentencing.

16         MS. GLASHAUSSER:  But, your Honor, your Honor is

17  proposing—

18         THE COURT:  Sentencing is in the hands of the judge.

19         MS. GLASHAUSSER:  Sentencing is in the hands of the

20  judge, but—

21         THE COURT:  I understand your argument, and I reject

22  it.  There's a provision for resentencing, because a basic part

23  of the sentence is to give restitution to the victim, and if

24  someone undertakes to pay restitution as a condition of his

25  sentence and willfully fails to do that, one of the two

P4T1TRUS

1    conditions for 3614 is imposed, and therefore, we have this

2    proceeding today.  So I suggest that we go on to the

3    proceeding.

4              MS. GLASHAUSSER:  Your Honor, if I may just briefly,

5    this is, as far as we are aware, a novel situation.  There is a

6    whole other legal framework available to the Court to which we

7    have no objection——

8              THE COURT:  We've gone through that, and it's not

9    effective.  Given all the considerations of 3553(a),

10   restitution being one of those, the original sentence has to be

11   changed because of the defendant's willful failure to pay

12   restitution.

13             MS. GLASHAUSSER:  But violations of supervised

14   release, that is a new conduct your Honor is talking about;

15   that either is a new offense or it's a violation.

16             THE COURT:  You've made the point.

17             MS. GLASHAUSSER:  But violations of supervised

18   release——

19             THE COURT:  You've made your point.

20             MS. GLASHAUSSER:  Your Honor——

21             THE COURT:  You've made your point.

22             MS. GLASHAUSSER:  The breach of trust your Honor is

23   speaking about is precisely what violations of supervised

24   release are designed——

25             THE COURT:  You've made your point.  I've rejected the

P4T1TRUS

1    argument.

2            MS. GLASHAUSSER:  Thank you, your Honor.

3            THE COURT:  You'll be making the same point to the

4    Second Circuit.

5            All right.

6            MS. GLASHAUSSER:  Your Honor offered at the beginning

7    for us to do additional writing with respect to the guidelines

8    issue.  I would like to take you up on that offer and do a

9    briefing schedule with respect to that and other issues that I

10   understand Mr. Gombiner and Mr. Flood wish to be——

11           THE COURT:  You can send me a letter by Friday.

12           MS. GLASHAUSSER:  Thank you.

13           MR. GOMBINER:  Just to be clear, we are not ready for

14   resentencing today.  The letter I wrote to the Court raised our

15   objections, which I believe, still believe, are entirely valid.

16   So if the Court is giving us till Friday to write a letter,

17   then we could also then address the many other issues we have——

18           THE COURT:  No.  Address them now.

19           MR. GOMBINER:  Okay.  Well——

20           THE COURT:  I scheduled this day, right?  You're here,

21   I'm here.  Let's not waste the time.  Proceed.

22           MR. GOMBINER:  Well, okay.

23           Judge, we have numerous objections, first to the facts

24   in the PSR.  Now I didn't put these in the letter I wrote with

25   respect to this sentencing because that letter addressed the

P4T1TRUS

1    fact that any resentencing is in violation of Mr. Truglia's—I

2    know the Court is determined—

3            THE COURT:  Do you want to go into the PSR?  I'll be

4    glad to go into the PSR.  Before we do that:

5            Mr. Truglia, have you read the amended PSR?

6            THE DEFENDANT:  Yes, your Honor, I've read the amended

7    PSR.

8            THE COURT:  And you've discussed them thoroughly with

9    Mr. Gombiner or other members of his team?

10           THE DEFENDANT:  Your Honor, today is actually the

11   first day that I've read the amended PSR, so I have not had a

12   chance to discuss it with counsel.

13           THE COURT:  You've had an opportunity for some time,

14   though, no?

15           MR. GOMBINER:  Well, Judge—

16           THE COURT:  I'm not talking to you, Mr. Gombiner.

17           You've had an opportunity for some time, though,

18   haven't you?

19           THE DEFENDANT:  Today is the first day that I'm seeing

20   this.

21           THE COURT:  But you had an opportunity to see it

22   before.

23           THE DEFENDANT:  It was not sent to me, so no, I did

24   not.

25           THE COURT:  On March 7, 2025—that's almost two months

P4T1TRUS

1    ago——a revised final presentence investigative report as to

2    Nicholas Truglia was filed on ECF.  You've had an opportunity

3    since then because I'm certain your lawyers sent them to you.

4              MR. GOMBINER:  Judge, can I——

5              THE COURT:  Can I finish speaking with Mr. Truglia?

6              MR. GOMBINER:  I don't——

7              THE COURT:  Mr. Gombiner, can I finish speaking with

8    him?

9              MR. GOMBINER:  Well, Judge——

10             THE COURT:  You've had almost two months' time to read

11   it.

12             MR. GOMBINER:  No.

13             THE COURT:  All right.  Let's go on what errors there

14   are in the PSR.

15             MR. GOMBINER:  Judge, first, I want to make clear that

16   Mr. Truglia did not receive a copy of the——

17             THE COURT:  It was on ECF, Mr. Gombiner.

18             MR. GOMBINER:  No, it wasn't.

19             THE COURT:  It was your obligation to send it to him.

20             MR. GOMBINER:  Well, Judge, then——I have discussed

21   this case——

22             THE COURT:  I am sure, Mr. Gombiner——I am sure,

23   Mr. Gombiner, that you have, by your integrity and by your

24   experience, and by your knowledge, properly sent that PSR to

25   Mr. Truglia.  I am sure of it.

P4T1TRUS

1      MR. GOMBINER:  Well, you're not——okay.  All right.

2  Judge, one of the——

3      THE COURT:  And don't traduce your own professionalism

4  by your zeal for your client.  You're one of the finest lawyers

5  in this court, Mr. Gombiner.  You're a zealous advocate.  I

6  appreciate that, and I respect you for that.  But never traduce

7  your own professionalism.

8      Let's go on with the report.  What's wrong with it?

9      MR. GOMBINER:  Okay.  Judge, I just want to preface

10  this——

11      THE COURT:  No, don't preface it.  What's wrong with

12  it?

13      MR. GOMBINER:  I want the record to reflect that we

14  were not counsel at the original sentencing.

15      THE COURT:  I understand that.  There was a different

16  lawyer.

17      MR. GOMBINER:  Our objections to the report, some of

18  which we only really realized when we got Victim-1's

19  supplemental victim impact letter last Friday, but——not all of

20  them, but some of them stem from this.  We object to at least

21  the following——wait, let me just make sure.  Sorry, Judge.  I

22  have to——

23      THE COURT:  Do you want to sit down and collect your

24  thoughts, Mr. Gombiner?

25      MR. GOMBINER:  No, I don't need to.  My thoughts are

P4T1TRUS

1    collected.  I just had the wrong document in front of me.

2          Okay.  We're objecting to paragraph 20 of the PSR.

3    That paragraph——

4          THE COURT:  Let me get to it, please.

5          "Over the course of a few hours," that paragraph?

6          MR. GOMBINER:  Yes.

7          THE COURT:  Okay.

8          MR. GOMBINER:  We're objecting to the figure that they

9    transferred approximately $983,000 of the victim's

10   cryptocurrency to the Truglia account.  We don't believe there

11   is a satisfactory factual foundation for that allegation, in

12   terms of what the value of the cryptocurrency was.  We object

13   to the last sentence in the paragraph that contends that at

14   that time——"at the time," which the time is not specified,

15   although——

16         THE COURT:  January 2018.

17         MR. GOMBINER:  Well, January 2018.  Okay.  In January

18   2018, even on January 7, 2018, the triggers that were in

19   Victim-1's account——and there were 3 million of them——the value

20   of those triggers was in free-fall.  It was descending like in

21   a vertical line downward.  So at any particular even minute,

22   the value was different almost in every time lower than the

23   minute before.

24         THE COURT:  The figure for restitution was found in

25   paragraph 22.  It's $22,660,007.39.

P4T1TRUS

1          That was the figure that was found at the time of the

2     original sentencing.

3          MR. GOMBINER:  Yes, but I wasn't counsel at the time.

4          THE COURT:  All right.  But no one objected to it.

5          MR. GOMBINER:  Well, I'm objecting to it now.

6          THE COURT:  It's too late.

7          MR. GOMBINER:  Okay.  Then we're not ready for

8     sentencing, because it shouldn't be too late now.

9          THE COURT:  It is too late now.

10          MR. GOMBINER:  It can't be too late to have the right

11     number.

12          THE COURT:  I have found the fact.  If you want to

13     make a motion for rehearing, make it.  That was——

14          MR. GOMBINER:  I do want to make a motion for

15     rehearing.

16          THE COURT:  Your comments are rejected.

17          What's next?

18          MR. GOMBINER:  Okay.  So we're objecting to——

19          THE COURT:  You objected to 20 through 22 on the

20     ground there's no support for the number $22,660,007.39.  That

21     objection is denied.

22          MR. GOMBINER:  We're objecting to paragraph 25 in

23     which it says that, "At the November 30, 2022, sentencing,

24     Truglia's defense counsel Jeffrey Udell affirmed that Truglia

25     had approximately $61,800,000 in assets."  That is just simply

P4T1TRUS

| 1 | false.  Mr. Udell specifically put on the record that

| 2 | Mr. Truglia did not have that much in assets, because that

| 3 | includes about over $5 million of cryptocurrency which

| 4 | Mr. Udell pointed out he had already advised Probation Officer

| 5 | Kim that Mr. Truglia did not any longer possess those assets.

| 6 | That was objected to at sentencing.  So he didn't agree to

| 7 | that, he objected to it.  And the——

| 8 |          THE COURT:  I have your point.

| 9 |          MR. GOMBINER:  And the Court didn't make any finding——

| 10 |          THE COURT:  If you had pointed this out in a letter, I

| 11 | could have checked.  You didn't.

| 12 |          MR. GOMBINER:  I don't think we should be going

| 13 | forward with resentencing here because I haven't written the

| 14 | Court——

| 15 |          THE COURT:  It's much more efficient, when you

| 16 | schedule something or other——I don't remember any letter from

| 17 | you saying, "I'm not ready.  Give me more time."

| 18 |          MR. GOMBINER:  The letter I submitted to the Court

| 19 | made clear that we were objecting on constitutional grounds to

| 20 | a resentencing.

| 21 |          THE COURT:  I heard you and I denied you.

| 22 |          MR. GOMBINER:  Okay.

| 23 |          THE COURT:  So we're past that now, and now we're

| 24 | going into the sentencing, which is something I ordered.

| 25 |          MR. GOMBINER:  Well, Judge, okay.  Maybe——

P4T1TRUS

1          THE COURT:  I'm entitled to do that, Mr. Gombiner.

2    I'm the judge.

3          MR. GOMBINER:  I know you're the judge, but the fact

4    that you're the judge still doesn't mean it's correct to be

5    going forward with a sentencing where we, in a very detailed

6    letter, explained why the sentencing should not be going

7    forward at all, and where we didn't address these many complex

8    points.

9          THE COURT:  I have a letter from you, Mr. Gombiner, at

10   ECF 134:

11         "Your Honor, with the consent of the government, I'm

12   requesting that the resentencing for Mr. Truglia currently

13   scheduled for March 19, 2025, be adjourned for approximately

14   two weeks."

15         It's now April 28th.  You got more than two weeks.

16         "The final presentence report, dated March 10, 2025,

17   details conduct that raises substantial legal issues, including

18   whether resentencing is authorized under Title 18 U.S.C.

19   Section 3614.  I need the additional time to address these

20   issues."

21         You got the time; you addressed the issue; I've denied

22   it.  We're past it now, Mr. Gombiner.  We're past that now.

23         MR. GOMBINER:  Judge——

24         THE COURT:  Whether I'm correct or wrong, you can find

25   out by taking an appeal.  I am past it.  We're now going into

P4T1TRUS

1    the resentencing.

2           MR. GOMBINER:  Okay.  But, Judge, if we're going into

3    the resentencing, we should have not just me standing here

4    reading my objections, you know, orally; we should have the

5    opportunity, particularly because many of these objections, it

6    requires a lot of granular data, to explain why we're correct

7    in these objections.  We should not be burdened with having to

8    sit here——

9           THE COURT:  How much time does the law give you to

10   make objections to an amended presentence report?

11          MR. GOMBINER:  Two weeks.

12          THE COURT:  All right.  Have you, in your vast

13   experience, Mr. Gombiner, asked the court for additional time

14   because of the complexities of the issue or because you're

15   taken up on other matters, and have you been getting those

16   kinds of responses?

17          MR. GOMBINER:  I'm sure I have.

18          THE COURT:  Yes.  Did you make such a letter request

19   here?

20          MR. GOMBINER:  I'm only making the request now

21   because——

22          THE COURT:  The answer is yes or no.  The granularity

23   and the complexity and the numbers of facts have been before

24   you for some period of time.

25          MR. GOMBINER:  Judge, first, this is——so I'm speaking

P4T1TRUS

1   just candidly, as I always do, but the fact is, all of these

2   numbers and stuff, because I wasn't counsel at the original

3   sentencing, it wasn't until very recently that I became

4   actually aware of the problems with these numbers, and it goes

5   to the issue we're talking about.

6           THE COURT:  What do you want, Mr. Gombiner?

7           MR. GOMBINER:  I want two weeks to file an additional

8   sentencing letter.

9           THE COURT:  All right.  I'll tell you what,

10  Mr. Gombiner.  I'm going to give you the time, but I want you

11  and I want Mr. Truglia to understand what's at stake here.

12  Assuming that I'm correct that 3614 is available and I make the

13  resentence and I do the resentence, I look at the guidelines,

14  where the question of whether or not there's an acceptance of

15  responsibility, and the guidelines will be probably higher than

16  51 to 63 months if I find there hasn't been an acceptance of

17  responsibility.  They tell us it's another three points, so

18  instead of 51 to 63, which is level 24, it will be level 27.

19  So let's say I find it's 70 to 87 months.  Statutory maximum is

20  20 years.  I have a letter from Victim-1 which has disturbed me

21  enormously.  I'll share it with you.  And Mr. Truglia, I wish

22  you would listen.

23          MR. GOMBINER:  I have a copy of the letter.

24          THE COURT:  Yes.  I have it here.  I just want to find

25  it.

P4T1TRUS

1          All right.  If you turn to page 2 of the letter——and

2      perhaps Mr. Truglia could see a copy of it.  Do you have a copy

3      for Mr. Truglia?

4          MR. GOMBINER:  Yes.  I think he's seen this, Judge,

5      but I'll give him a copy.

6          THE DEFENDANT:  I have not seen that.

7          THE COURT:  Under the caption Truglia Admitted to the

8      Scheme of Flaunting the Court and Refusing to Pay Restitution,

9      Victim-1 writes, "Mr. Truglia's behavior toward the Court and

10     me was premeditated, as shown on his appearance on an episode

11     of *VICE* on Showtime.  The title of that is 'These Teenagers

12     Wouldn't Stop Robbing Millionaires.'  Although he did not show

13     his face in the episode, Mr. Truglia is credited on IMDB for an

14     appearance in the documentary."  And then there's a citation:

15     "Nicholas Truglia played by Nicholas Truglia."  "In that

16     documentary, Mr. Truglia said that I guess he planned to stay

17     in jail for up to a decade so that he could spend the

18     cryptocurrency he amassed freely when he was released.  As

19     Truglia states in the documentary, 'It really wouldn't be that

20     many years.  It's not like murder.  It's really just a decade

21     is what people look at, and even then, I still have my money

22     when I got out because it's Bitcoin.  It's not like a bank

23     account.  They can't take my money.  I mean, obviously it would

24     suck to go to jail for a decade, but with everything I have set

25     up, I don't think that will happen.'"  And there's a citation.

P4T1TRUS

1          So what do you think a sentencing judge has in mind

2   when he reads something like that, Mr. Gombiner?

3          MR. GOMBINER:  Well, Judge, can I just make——

4          THE COURT:  What do you think?  I mean, do you think

5   that maybe the sentencing judge is thinking, maybe I should

6   give that guy 20 years because of the considerations of 3553(a)

7   and continued damage to the community?

8          You might want to listen to me, Mr. Gombiner.

9          MR. GOMBINER:  I am listening to you.

10          THE COURT:  This is something I might do.

11          MR. GOMBINER:  Judge, we will——

12          THE COURT:  Can I finish my statement?

13          MR. GOMBINER:  Judge, we are going to address——

14          THE COURT:  May I finish speaking, please?

15          MR. GOMBINER:  Yes.  I thought you were finished.

16   Excuse me.

17          THE COURT:  No.  I'm looking for something.  I'm

18   looking for 18 U.S.C. 3553(a), because I have to go back to

19   that again when I resentence.  Among the things that are

20   important is to afford adequate deterrence to criminal conduct.

21   It may be that 20 years is necessary for that.  To protect the

22   public from further crimes of the defendant.  Again, same

23   thing.  And there may be other things as well.  But think,

24   Mr. Gombiner, and discuss with your client whether you want to

25   risk that.

P4T1TRUS

MR. GOMBINER:  Judge, one thing I just——we'll address

that——

THE COURT:  I'm not sentencing him.  I'm just telling

you that that's the consideration.

MR. GOMBINER:  Judge——

THE COURT:  I've given you fair warning.

MR. GOMBINER:  Thank you, Judge.  I'm just going to

say that we will address that alleged documentary in our

letter, and I think the Court will have a very different

opinion as to what that Victim-1 is actually relying on.  But

we'll address that in our letter.

THE COURT:  How much time do you want?

MR. GOMBINER:  Well, maybe two weeks because there are

a lot of different objections we have, and some of them are

somewhat complicated.

THE COURT:  Mr. Capozzi, what's the situation with

supervised release?  How much more is there?

MR. CAPOZZI:  Your Honor, I think the fact is there

still is an ongoing violation proceeding, which would toll the

period.  So I don't have it right in front of me, but I believe

that it can't expire because there's been no finality on the

supervised release allegations.

THE COURT:  All right.  So do you care if we have an

extension of three weeks or a month?

MR. CAPOZZI:  Your Honor, no objection to that.  We

P4T1TRUS

1    would ask for one week's time to respond to whatever it is that

2    they file.

3            THE COURT:  Right.

4            MR. CAPOZZI:  We would note, which you already noted,

5    that this was scheduled as a resentencing back in December, but

6    again, given everything that's happened today, we do not object

7    to three more weeks for the defense.

8            THE COURT:  Oh, I think it's a good idea, because

9    perhaps my words might sink in and lead to something, though I

10   doubt it, because nothing else has.

11           All right.  How about July 8 at 10:30 for the

12   resentence?

13           MR. GOMBINER:  July 8?

14           THE COURT:  Yes.

15           MR. GOMBINER:  That's fine, Judge.

16           THE COURT:  Mr. Capozzi, is that okay with you?

17           MR. CAPOZZI:  I'm just checking to make sure I'm not

18   out of town that day.

19           THE COURT:  Yes.

20           MR. GOMBINER:  Judge——

21           MR. CAPOZZI:  Yes, your Honor, the government is

22   available on July 8th.

23           THE COURT:  Could you obtain a copy of the program

24   cited by Victim-1 and make it available to the Court and to

25   defense counsel?

P4T1TRUS

1        MR. CAPOZZI:  We will seek to obtain a copy, your

2    Honor.

3        THE COURT:  Could you schedule the exchanging of

4    papers.  Do it now.

5        MR. GOMBINER:  Judge, this is just a very slight

6    alteration, but if the Court can't do it, it's fine.  But

7    Ms. Glashausser isn't going to be back until July 10th, so if

8    we could do it the 10th or the 11th, that would be better for

9    us, but——

10        THE DEPUTY CLERK:  Okay.  The 10th.

11        THE COURT:  Is the 10th okay with you, Mr. Capozzi?

12        MR. CAPOZZI:  Yes, your Honor.

13        THE COURT:  Okay.  July 10th, 10:30.

14        (Counsel conferring)

15        MR. GOMBINER:  Judge, what we're going to propose is

16    that in light of the July 10th resentencing, that we'll file

17    all our objections by May 25th and the government would have

18    two weeks to respond to that.  That should be, you know, more

19    than enough time for everyone to be able to review everything.

20        THE COURT:  Is that satisfactory, Mr. Capozzi?

21        MR. GOMBINER:  Oh, sorry, Judge.

22        THE COURT:  Let's go off the record.  You discuss it

23    amongst yourselves.

24        (Counsel conferring)

25        MR. GOMBINER:  So Judge, now that parties have

P4T1TRUS

1    conferred, we would propose June 4th for our letter, June 18th

2    for the government to respond, and then the Court would have

3    our submissions, you know, three weeks before sentencing.

4            THE COURT:  June 4 for the defendant to state all

5    objections, and whatever supplemental letter you want to give

6    to supplement the motion.

7            MR. GOMBINER:  Thank you, Judge.

8            THE COURT:  And June 18 is the filing date of the

9    government's reply.  And July 10 at 10:30 for the resentencing.

10           Mr. Gombiner, you should be seriously considering with

11   your client what I said.

12           We're adjourned until July 10.

13           MR. GOMBINER:  Thank you, Judge.

14           MR. CAPOZZI:  Thank you, Judge.

15           THE COURT:  The consideration of violation of

16   supervised release will be combined with the resentencing.

17                           o0o

18

19

20

21

22

23

24

25