Supplemental Victim Impact Statement submitted by Michael Terpin through his attorneys Greenberg Glusker Fields & Machtinger and Timothy J. Toohey, a Professional Corporation.

*United States v. Truglia*, Case No. 19 Cr. 921 (S.D.N.Y.) (AKF) ("*Truglia* Matter")

## INTRODUCTION

My name is Michael Terpin. Although I am not referenced by name in the *Truglia* Matter, the allegations in the indictment relate solely to the January 7, 2018 theft of my cryptocurrency. I have also appeared at hearings in this matter relating to Nicholas Truglia ("Mr. Truglia"), his theft of my cryptocurrency, and his subsequent failure to provide any restitution to me for such theft, despite his having been ordered to do so by the Court. The following is a supplement to my prior Victim Impact Statement ("VIS"), which is incorporated here by reference.

Since my prior VIS, I have continued to expend substantial amounts of energy and money in pursuing Mr. Truglia in an attempt to obtain court-ordered restitution. Mr. Truglia, although promising multiple times to provide me the Court-ordered restitution of $20,379,007 (with interest the current total is over $22,28,808.07), has never paid me anything. *See* Stipulation and Order, Docket Record ("Dkt") 126. Despite numerous promises, including leading my attorneys on a wild goose chase around Manhattan in April 2023 to collect what he claimed were the "private keys" to his cryptocurrency holdings, he has made no payment to me whatsoever.

Instead of paying me anything, Mr. Truglia has engaged in what the Court has found are repeated lies, evasions, and subterfuges to avoid paying me any of the over $20 million he had agreed to pay over three years ago. In the words of the US Attorney prosecuting him, Mr. Truglia has "engaged in a sustained campaign to deceive this court and re-victimize the Victim," i.e., myself. Dkt 106-1, (Declaration of Timothy V. Capozzi in support of an Order to Show Cause, February 9, 2024). Mr. Truglia has blatantly disobeyed not only the order of the Court, but an agreement he signed with me to pay the restitution to me in Bitcoin.

It is also likely that Mr. Truglia continues to have means to pay restitution. He spent hundreds of thousands of dollars on luxury goods when he was released from prison and also bragged on a nationwide television show that he didn't mind spending a few years in jail because he still had Bitcoin.

1

I therefore request the Court to order Mr. Truglia to be incarcerated for the maximum sentence permissible and to increase the amount of restitution to me to include interest at the statutory maximum. Only a prolonged period of detention has any chance of convincing this incorrigible, callous and recidivist offender of the error of his ways and persuading him to provide his agreed-upon and court-ordered restitution for the harm I continue to suffer by his actions.

**Truglia Admitted to the Scheme of Flaunting the Court and Refusing to Pay Restitution.**

Mr. Truglia's behavior towards the Court and me was premediated, as shown by his appearance on an episode on "VICE" on Showtime. These Teenagers Wouldn't Stop Robbing Millionaires  Although he did not show his face in this episode, Mr. Truglia is credited on IMDB for an appearance in the documentary.  https://www.imdb.com/title/tt11634154/ (Nicholas Truglia played by Nicholas Truglia).

In that documentary Mr. Truglia said that planned to stay in jail for up to a decade so that he could spend the cryptocurrency he amassed freely when he was released. As Truglia states in the documentary, *"It really wouldn't be that many years. It's not like murder. It's really just like a decade at most is what people look at, and even then I'd still have my money when I got out because it's bitcoin. It's not like a bank account. They can't take the money. I mean obviously it would suck to go to jail for a decade. But, um, uh, the way I have everything set up I don't think that will happen."* (Documentary at 31:15.)

Against this background, which clearly shows Mr. Truglia's intent, his pattern of fabrication, evasions, and delay makes perfect sense. Mr. Truglia always intended to try to fool those who attempted to hold him responsible for his actions. His was a callous and premeditated plan and he had no genuine sympathy for me or his other victims.

**Mr. Truglia's Failure to Pay Restitution In Violation of Court Orders and the Court's Findings Truglia Is in Contempt and Has Violated His Release Conditions.**

As the Court is well aware, having held over a dozen hearings on this matter, Mr. Truglia's behavior has been blatantly contemptuous of the legal process, the authority of the Court, and of my rights as his undoubted victim. If the matter were not so serious, his pattern of lies and excuses would be ludicrous and implausible even on today's popular entertainment media. Indeed, Mr. Truglia's egregious behavior requires that he be given the maximum possible sentence at the upcoming hearing. Not only is this appropriate for this case, but it would give other offenders of his ilk a salutary lesson on the consequences of thumbing their noses against federal wiretapping laws and judicial authority. Having promised to make restitution in return for only spending eighteen months in custody, Mr.

Truglia should not be allowed to make a mockery of the Court and our system of justice through further excuses and delay.

Although the Court is well aware through numerous hearings of the facts of Mr. Truglia's behavior, I repeat them here because, as the victim of his actions, I have been forced in the last three years to expend considerable time and effort to obtain restitution and insure that Mr. Truglia is held responsible for the harm he has caused and continues to cause me.

On October 28, 2021, Mr. Truglia pled guilty to wire fraud, stating that he had made a "terrible mistake for which I am very ashamed of" Dkt. 39 at 20. At that hearing, the Magistrate Judge warned Mr. Truglia that there would be "serious consequences" if he did not comply with the terms of his release.

On December 6, 2021, Mr. Truglia (who throughout these proceedings has been represented by experienced counsel), appeared at a hearing because of his violation of the conditions of his pretrial release. Dkt. 46. Those violations included possessing an Internet-enabled computer and possession of cocaine. *Id*. at 2. At the hearing, the Court remanded Mr. Truglia to jail for detention. *Id*.

On November 2, 2022, Mr. Truglia was sentenced by the Court. As the Court noted in a subsequent hearing, Mr. Truglia "obtained a lower penalty, a lower term of custody because he promised restitution" at this hearing. Dkt. 113 (February 29, 2024 hearing) at 11. Instead of the guideline sentence of 51-63 months, the Court sentenced Mr. Truglia to a term of 18 months' imprisonment, to be followed by a term of three years' supervised release because he promised restitution. Indeed, Mr. Truglia's willingness to pay restitution was a significant factor in his reduced sentence—if not *the* significant factor. Dkt. 67 at 15 ("I'm impressed by the willingness that you [Mr. Truglia] have shown in paying back the victim. . . . I think the right sentence is 18 months. It takes into consideration what I've said about you making restitution . . . .") *Id*.

At the November 2, 2022 hearing, when Mr. Truglia was still in detention, Mr. Truglia stated that he had more than adequate funds to pay restitution to me because his accounts were online and accessible. *Id*. at 12. From that point onward, Mr. Truglia's story about the location of his cryptocurrency changed constantly, which led the Court to conclude that "all of [what Mr. Truglia claimed] was a ruse to renege on his solemn obligation to the Court and to the victim to pay restitution." *Id*. at 12, 31. Notably, when Mr. Truglia agreed to restitution, he never told the Court that "he had to be released from detention to get the key" to access his cryptocurrency holdings. Dkt 113 (2/29/24 hearing transcript) at 15.

At the November 2, 2022 hearing, the Court ordered $20,379,007 in restitution ("Restitution Award") to me. Mr. Truglia agreed—and the Court ordered—that the Restitution Award

would be paid in two installments. Mr. Truglia was to pay the first $12,100,000 of the award within thirty (30) days and the remaining $8,279,007 of the award within sixty (60) days. This agreement was embodied in a December 1, 2022 Order of the Court (Dkt. 61) signed by Mr. Truglia and his counsel which stated that the first installment would be paid on or before December 31, 2022 and the remaining $8,279,007 by January 30, 2023.

At this same November 2, 2022 hearing, Mr. Truglia, who was incarcerated at the time, did not mention that there would be any impediment to making these payments. He never mentioned that he would have to obtain private keys for his account from third parties. Indeed, I had the clear impression that Mr. Truglia could arrange for the payments to me even though he was in detention. At that point in time, Mr. Truglia was claiming that he had an account with 3196 Bitcoin (BTC) that was worth $88 million.

Through counsel, Mr. Truglia subsequently agreed to pay the two installments of the restitution through BTC to me directly. As noted below, he never made payments for either of these installments, despite being represented by counsel in the agreement.

On December 29, 2022, Mr. Truglia was released from detention and went to Florida. Dkt 106-1. Although Mr. Truglia had entered into the agreement when he was not in custody, his "get out of jail" card apparently convinced him that (as he had predicted) he was immune from the consequences of ignoring the Court's orders and his agreement with me.

When no payment from Mr. Truglia was forthcoming by the December 31, 2023 deadline, my counsel and I contacted Mr. Truglia. We also contacted the AUSA assigned to the case, Timothy Capozzi, to inform him that Mr. Truglia had not made payment.

Unbeknownst to us at the time, Mr. Truglia treated the windfall of his being released from jail as an opportunity to ignore the requirements of the court-ordered restitution. He returned quickly and apparently without remorse to the hedonistic and irresponsible conduct in which he had engaged when he played a key role in facilitating the theft of my cryptocurrency. As I learned later, when Mr. Truglia was in Florida, he committed numerous violations of the conditions of his release, including failure to provide adequate financial disclosures. Rather than making restitution to me, Mr. Truglia also bought numerous luxury goods, including high-priced sneakers and apparel. Mr. Truglia also violated the restrictions on travel placed as a condition of his release from detention. As I learned later, he also continued to make transactions in cryptocurrency.

We were directly in touch with Mr. Truglia after his release because his prior attorney was no longer representing him. When we brought to his attention his failure to provide restitution, Mr. Truglia continued to promise me and my counsel that he would be able to make restitution. It is at this point that Mr. Truglia's lies went into overdrive. When we

inquired about his means of making the restitution, Mr. Truglia claimed that he had to assemble from three separate individuals in New York the twenty-four word private key for his account so he could make the payment. Despite being denied permission to do so, he traveled to New York in an attempt to persuade us that he was able to make the required payments. Although in retrospect it may seem that my counsel and I should have not believed Mr. Truglia, we still thought that he would take his obligations under the court-ordered judgment and our agreement seriously. Mr. Truglia proved us wrong. He *had*—and as far as we can tell—*still has* no moral compass. Legal proceedings to him are irrelevant because (as he stated on television) he apparently has decided to "wait out" imprisonment and access his ill-gotten holdings upon his release.

On April 6, 2023, my counsel Cornelius McCarthy, accompanied Mr. Truglia in a trip around New York on a supposed mission to collect the private keys for his cryptocurrency account from three individuals. Mr. Truglia had told us that these three individuals could produce the private keys that would allow access to his cryptocurrency wallet. After making Mr. McCarthy wait on the street without meeting the individuals who supposedly held portions of the private keys, Mr. Truglia produced two pieces of paper that allegedly contained portions of the key words. Mr. Truglia was unable to get the third part of the key words, which he claimed (unpersuasively) were in the hands of a nightclub acquaintance Bennet Genovesi. *See* Dkt. 88, (September 18, 2023 Hearing Transcript) at 64-77. As Mr. Capozzi stated in a November 7, 2023 hearing before the Court, it is clear Mr. Truglia fabricated this story " to run the victim and the victim's counsel on a wild-goose chase about this particular wallet." Dkt. 94 (November 7, 2023 Hearing Transcript) at 205.

Mr. Truglia also fabricated new stories about his inability to access the cryptocurrency and provide restitution. For example, Mr. Truglia claimed that he had an account through the cryptocurrency exchange "Kraken." As supposed proof, he produced what he said was evidence of an over-the-counter transaction with that exchange. Through my knowledge of cryptocurrency, I was able to determine that the BTC in the transaction was mined in 2010, was not in Mr. Truglia account, and that the transaction was not of the type that Mr. Truglia claimed. Dkt. 88 at 76-77..

Mr. Truglia's manufactured and blatant fabrications regarding the availability of his cryptocurrency were starkly at odds with what he was claiming at the time to his friends. For example, Mr. Truglia texted Bennet Genovesi in early 2023 to say that he had crypto currency worth "eight figures," i.e., at least $10 million. Dkt. 90 (September 2, 2023 Hearing Transcript) at 125. Mr. Truglia continued to claim that Mr. Genovesi had either the missing third portion of his private key or the hard drive that could access the cryptocurrency. Mr.

Genovesi, in testimony under oath to this Court, testified that he had neither. Dkt. 94 (November 7, 2023 Hearing Transcript) at 166-168.

As I learned later, in January and February 2023 Mr. Truglia used money from an undisclosed Wells Fargo account to buy luxury goods, fund his brokerage account and make transfers to other cryptocurrency exchanges, rather than making restitution to me. Dkt 106-1 at ¶ 12. In later sentencing Mr. Truglia for contempt, the Court found that these claims were "indicative of [Mr. Truglia's] intent never to pay his debt. . . This is not a case of indigence. This is not a case of inability to pay."

When Mr. Truglia's violation of the terms of his release, including his failure to make restitution payments to me, came to light, the Court held several hearings to determine whether to find Mr. Truglia in contempt or whether there was a basis for resentencing him. The transcripts of these hearings show that the Court did not accept Mr. Truglia's story. For example, the Court stated "I think that Mr. Truglia knew that, knew that he could hoodwink me and the creditor [i.e., Terpin], lied in other respects in the financial disclosures that he gave, and [sought] a lovely bargain for a more lenient sentence." 11/20/23 transcript at 13. As the AUSA Timothy Capozzi stated, Mr. Truglia, instead of making restitution, "engaged in a sustained campaign to deceive this court and re-victimize the Victim, offering the hope of timely restitution while moving substantial sums of money into an undisclosed account and purchasing luxury items." Dkt. 106-1 ¶ 14.

After several hearings, the Court found Mr. Truglia in contempt. See Dkt 113 (February 29, 2024 hearing on motion for contempt). In finding Mr. Truglia in contempt, the Court cited Mr. Truglia's failure to pay restitution, Mr. Truglia's constantly changing stories regarding his BTC holdings, his expenditures on luxury goods, and his general lack of credibility.

In 2024, Mr. Truglia continued to fabricate stories about his inability to access his cryptocurrency. Among recent false statements are Mr. Truglia's claim that he obtained money in an account from someone who just wanted to watch him gamble and that his cryptocurrency was tied up because his e-mail account on Proton mail was locked. Dkt. 123 (October 15, 2024 hearing transcript) at 24, 27-45. In refusing to release Mr. Truglia from custody, the Court stated "he's going to [make restitution efforts] in jail because I've lost trust in him. The story is fanciful."

### My continuing investigation of Mr. Truglia's cryptocurrency activities

Separate and apart from the admirable efforts of the Court and AUSA Timothy Capozzi, I have also undertaken the effort and expense of trying to uncover evidence regarding Mr. Truglia's continued access to and use of cryptocurrency. My investigations include subpoenas from my counsel to cryptocurrency exchanges, including Binance, Gemini and

FTX. From these investigations, I have shown that many of the statements made by Mr. Truglia to the Court are demonstrable lies.

Binance

The documents produced by Binance US, which I have shared with Mr. Capozzi, show outbound wire transfers starting in January 2023 to TD Bank and to Wells Fargo. They also show that he deposited funds into a Binance US account from a Kraken account (albeit not the Kraken account he claimed to have). The records also show that Mr. Truglia withdrew 1.1 BTC from Binance US on April 25, 2023.

Gemini

The records show that Mr. Truglia had an account at hitbtc.com from which he sent 50 ETH (Ethereum) to Gemini. HitBTC is a non-American exchange that does not allow US persons.

FTX, Coinbase and Other Exchanges

The records show that Mr. Truglia cashed out large amounts via FTX and Coinbase exchanges and received a 505 ETH (Ethereum) deposit from stake.com worth over $1.7 million. In 2021 when Mr. Truglia was in prison or in probation (when he was not supposed to have access to Internet devices) he cashed out $390,000 and $530,000 in separate transactions. In short, even when he was in prison Mr. Truglia continued to have access to and cash out cryptocurrency.

**My Efforts to Obtain Redress from AT&T**

Since the date of my last VIS, I have continued to expend considerable time and energy to make myself whole in the lawsuit against AT&T which I referred to in that statement. See *Terpin v. AT&T*, Case No. 2:18-cv-06975-ODW-KS. AT&T continues to take a very aggressive stance in that case, which has substantially increased the costs of discovery and motion practice.

On March 30, 2023, the district court for the Central District of California granted summary judgment on all of my claims against AT&T. I timely appealed to the Ninth Circuit Court of Appeals. On September 30, 2024, the Ninth Circuit reversed the ruling as to my most significant claim and remanded the matter back to the district court.

In a matter of first impression, the Ninth Circuit found that there was a triable issue of fact regarding my claim that my rights under Section 222 of the Federal Communications Act (FCA) had been violated. See *Terpin v. AT&T Mobility*, 118 F.4th 1102, 1116 *et seq.* (9th Cir. 2024). Relevant to this matter, the Ninth Circuit ruled that AT&T's giving access to hackers to information regarding my account could have violated the FCA because it allowed

communications meant for my phone to be routed to unauthorized parties. My victory in this case is part of my campaign to bring to justice all those responsible for my losses, including Mr. Truglia, and to publicize the scourge of SIM-swapping.

My lawsuit against AT&T continues (with AT&T having brought another motion for summary judgment on proximate cause grounds), but I will continue to pursue the matter. I look forward to having a trial by jury regarding my FCA claim against AT&T.

**My Requests to the Court Regarding Sentencing, Forfeiture and Restitution**

As I stated in my original VIS, I believe it is important that hackers, like Mr. Truglia, who seem to consider SIM swaps like the one I suffered to be a game, to be held accountable for the harm they cause. Mr. Truglia has shown that he does not take a federal criminal prosecution seriously, despite the years he may potentially incarcerated. Even when he was in prison or under probation, he continued to access cryptocurrency accounts which he has hidden from the Court and me. Mr. Truglia shows every sign of having made the decision to "wait out" the proceedings and his incarceration believing that he will eventually be released, just as he stated he would do on the VICE documentary on Showtime. On the day of release (even if it is many years), as he himself has proclaimed, he will be able to access his ill-gotten cryptocurrency without having paid any restitution to me.

Mr. Truglia is not only a recidivist offender but a callous, hardened thief and an inveterate liar who likely still has means to compensate me for the harm that he called. This is shown not only by the investigations of the prosecutors, but by my independent investigations. Moreover, it is undisputed that when Truglia was released from prison - and claimed he had no money and could not find his crypto wallet - that he spend several hundred thousand dollars on personal luxury items, with most of the funds coming crypto he transferred from crypto accounts he did not disclose. It is also undisputed that Truglia appeared on a national television show - VICE - and stated that he didn't mind spending a few years in jail because he still has the bitcoin (even though his face and voice were disguised, he was named in the credits of the show as being Nicholas Truglia.

Because I continue to suffer from his criminal actions and fabrications, I request that the Court order that Mr. Truglia pay the full amount of the Court's judgment ($20,279,007.00), plus interest at the legal rate to the date of payment. I further ask that all funds that are garnished from Mr. Truglia's seized possessions that are subject to forfeiture, including those listed in the Final Order of Forfeiture (Dkt. 130), be turned over to me, to the extent allowed by law.

I have reviewed the April 20, 2025 letter from counsel for Mr. Truglia to the Court. Like Mr. Truglia himself, his counsel attempts to minimize Mr. Truglia's actions, going so far as to disingenuously claims that "Mr. Truglia has already been already punished for his purported failure to pay restitution" and to Truglia's "supposed failure to pay restitution."

As I have written above, there is nothing "purported" or "supposed" about Mr. Truglia's failure to pay restitution. In return for an eighteen-month sentence, Mr. Truglia agreed to pay restitution. The Court explicitly stated that it was giving Mr. Truglia a lighter sentence because it was "impressed by the willingness" of Mr. Truglia to compensate me as the victim. Despite Mr. Truglia's promises, he has never paid me the restitution he promised—either through order of the Court or his agreement with me.

I therefore ask that the Court's resentencing of Mr. Truglia be for the maximum amount of time allowed under the sentencing guidelines, including any enhancements allowed by law. Mr. Truglia was only given the light sentence of eighteen months because the Court was impressed by his willingness to make restitution to me as a victim. Mr. Truglia lied in making such representations and has continued to lie for years about his willingness to make such restitution. The time for game-playing is over and the Court should order Mr. Truglia's detention for the maximum amount allowed under the sentencing guidelines. Only in this way may Mr. Truglia be properly punished for his blatant fabrications, illegal behavior and the harm he caused me.

For the reasons set forth above,

Respectfully submitted,


/s/ Michael Terpin

Michael Terpin

April 23, 2025

cc: Timothy Capozzi, Assistant United States Attorney

cc: Johnny V. Kim, United States Probation Officer

Case 1:19-cr-00921-AKH    Document 147-1    Filed 06/06/25    Page 10 of 10